TROUTMAN PEPPER LOCKE LLP
Elizabeth Holt Andrews (SBN 263206)
elizabeth.andrews@troutman.com
Three Embarcadero Center, Suite 800
San Francisco, California 94111-4057
Telephone: 415.477.5700
Facsimile: 415.477.5710

*Attorneys for Defendants*
MoneyLion Technologies Inc.,
MoneyLion of California LLC,
and ML Plus LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION—RIVERSIDE**

| | |
|---|---|
| Elena Bisquera, et al.,<br><br>Plaintiffs,<br>v.<br><br>MoneyLion Technologies Inc., et al.,<br><br>Defendants. | Case No. 5:26-cv-03296-SSS-E<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AS TO PLAINTIFFS ELENA BISQUERA AND JASON JONES**<br><br>Date: October 23, 2026<br>Time: 2:00 p.m.<br>Courtroom: 2 (via Zoom)<br>Judge: Hon. Sunshine S. Sykes |

# TABLE OF CONTENTS


Page

I. INTRODUCTION .......... 1

II. FACTUAL AND PROCEDURAL BACKGROUND .......... 2

A. Instacash and Credit Builder Background .......... 2

1. Instacash .......... 2

2. Credit Builder Loan .......... 3

B. The Arbitration Agreement and Class Waiver .......... 3

1. Plaintiff Bisquera Agreed to the Arbitration Agreement .......... 3

2. Plaintiff Jones Agreed to the Arbitration Agreement .......... 5

3. The Agreement Applies to All Claims and All MoneyLion Entities .......... 7

4. Plaintiffs Agreed to a Class Action Waiver, Pre-Litigation Dispute Resolution, and Had the Opportunity to Opt-Out .......... 8

C. Plaintiffs' Claims against MoneyLion .......... 9

III. III. LEGAL STANDARD .......... 10

IV. ARGUMENT .......... 12

A. The Arbitration Agreement is Valid and Enforceable .......... 12

B. Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreement .......... 14

C. The Court Should Compel Arbitration as to All Defendants .......... 16

D. The Court Should Enforce the Class Action Waiver .......... 17

E. The Court Should Stay Plaintiffs' Individual Claims But Dismiss Their Purported Class Claims .......... 18

V. CONCLUSION .......... 19

CERTIFICATE OF COMPLIANCE .......... 19


Troutman Pepper Locke LLP
Three Embarcadero Center
Suite 800
San Francisco, CA 94111

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) .......... 1, 11

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 1, 11

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) .......... 14

*Balar Equip. Corp. v. VT Leeboy, Inc.*,
336 F. App'x 688 (9th Cir. 2009) .......... 18

*Buckley v. Am. Express Co.*,
No. CV 12-00192 GAF, 2012 WL 12894182
(C.D. Cal. Aug. 22, 2012) .......... 15

*Capriole v. Uber Techs., Inc.*,
7 F.4th 854 (9th Cir. 2021) .......... 11

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .......... 12

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) .......... 10

*Collins v. Burlington N. R.R. Co.*,
867 F.2d 542 (9th Cir. 1989) .......... 18

*CompuCredit Corp. v. Greenwood*,
565 U.S. 95 (2012) .......... 1, 11, 16

*Crewe v. Rich Dad Educ., LLC*,
884 F. Supp. 2d 60 (S.D.N.Y. 2012) .......... 13

*Dennis L. Christensen Gen. Bldg. Contractor, Inc. v. Gen. Bldg. Contractor, Inc.*,
952 F.2d 1073 (9th Cir. 1991) .......... 15

Troutman Pepper Locke LLP
Three Embarcadero Center
Suite 800
San Francisco, CA 94111

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) ........ 1, 11

*Ferguson v. Corinthian Colls., Inc.*,
733 F.3d 928 (9th Cir. 2013) ........ 11, 15

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ........ 12

*Gold v. Deutsche Aktiengesellschaft*,
365 F.3d 144 (2d Cir. 2004) ........ 13

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) ........ 12

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011) ........ 11

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019) ........ 1

*Lee v. DoNotPay, Inc.*,
683 F. Supp. 3d 1062 (C.D. Cal. 2023) ........ 14

*Linares v. Keurig Dr. Pepper, Inc.*,
ED CV 26-836 PA, 2026 WL 1365985 (C.D. Cal. Apr. 23, 2026) ........ 18

*Mancilla v. ABM Indus., Inc.*,
No. 20 CIV. 1330 (KPF), 2020 WL 4432122
(S.D.N.Y. July 29, 2020) ........ 13

*Marciano v. DCH Auto Grp.*,
14 F. Supp. 3d 322 (S.D.N.Y. 2014) ........ 13

*Marmet Health Care Ctr., Inc. v. Brown*,
565 U.S. 530 (2012) ........ 1, 11

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ........ 13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ........ 12, 14

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) ........ 14

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ........ 12

*Nieva v. Macys Retail Holdings, LLC*,
CV 26-01284-MWF, 2026 WL 2350756 (C.D. Cal. June 30, 2026) ........ 18

*Peterson v. Regina*,
935 F. Supp. 2d 628 (S.D.N.Y. 2013) ........ 13

*Shearson/Am. Express Inc. v. McMahon*,
482 U.S. 220 (1987) ........ 12, 16

*Simula, Inc. v. Autoliv Inc.*,
175 F.3d 716 (9th Cir. 1999) ........ 14, 15

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ........ 18

*Sovak v. Chugai Pharm. Co.*,
280 F.3d 1266 (9th Cir. 2002) ........ 12

*Xatruch v. Raising Canes U.S.A., LLC*,
No. 2:25-cv-3341-DJC-SCR, 2026 WL 2517545
(E.D. Cal. Aug. 26, 2026) ........ 17

**Statutes**

9 U.S.C. §§ 1 *et seq.* ........ 1, 11

15 U.S.C. §§ 1601 *et seq.* ........ 9

15 U.S.C. § 1693k ........ 9

Cal. Civ. Code § 1916-2 ........ 9

Cal. Fin. Code § 22303 ........ 9

Cal. Civ. Code §§ 1750 *et seq.* ........ 10

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ........ 10



TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

Cal. Bus. & Prof. Code §§ 17500 *et seq.* ........ 10

**Other Authorities**

Cal. Const. art. XV, § 1 ........ 9

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

MoneyLion Technologies Inc., ML Plus LLC, and MoneyLion of California LLC (collectively, "MoneyLion") move to compel arbitration of Elena Bisquera's and Jason Jones's (collectively, "Plaintiffs") individual claims pursuant to an arbitration agreement, and dismiss their purported class claims pursuant to a class action waiver.

Regardless of their merits (or lack thereof), Plaintiffs' claims against MoneyLion must be resolved in arbitration pursuant to the terms of the Agreement for Resolving Disputes ("Arbitration Agreement") to which Plaintiffs agreed. The Arbitration Agreement broadly encompasses any "Claim" "relat[ing] in any way to [Plaintiffs'] use of or access to the MoneyLion Platform or to any product or service offered by or through the MoneyLion Platform." The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*. (the "FAA"), mandates that a binding arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The United States Supreme Court has repeatedly and consistently confirmed that agreements to arbitrate are fully enforceable as written. *See Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 183–84 (2019); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 509 (2018); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–34 (2013); *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532 (2012); *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97–98 (2012); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336, 343 (2011).

Similarly, Plaintiffs agreed to a class action waiver. Like agreements to arbitrate, the United States Supreme Court has consistently confirmed that class action waivers are binding and enforceable. *See Epic Sys. Corp.*, 584 U.S. at 502 ("Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings.").

Accordingly, the Court should grant the motion and enter an Order: (1) directing Plaintiffs, if they wish to continue pursuing their claims, to arbitrate the claims on an individual basis with National Arbitration and Mediation pursuant to the terms of the binding Arbitration Agreements; (2) dismissing Plaintiffs' purported class claims pursuant to the class action waiver; and (3) staying Plaintiffs' individual claims pending completion of arbitration.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Instacash and Credit Builder Background

#### 1. Instacash

MoneyLion offers an array of products for people seeking financial education and empowerment. One such product is Instacash, which is an earned wage access product that allows users to request an advance of their earned wages, with approved users qualifying for advances up to $500. *See* ECF No. 1 at ¶ 39; Declaration of Malavika Lobo ("Lobo Decl."), ¶ 7 and Ex. A. To sign up for Instacash, users provide their bank account information to MoneyLion, and MoneyLion decides whether to approve them for Instacash. *See* ECF No. 1 at ¶¶ 41–42; Lobo Decl. ¶ 7 and Ex. A. Instacash has no impact on a user's credit score, and a credit check is not required. *Id.* ¶ 7 and Ex. A. Users who receive an Instacash advance can do so for free—there are no interest charges or fees for Instacash advances sent through standard delivery, which takes between one and five business days due to processing times for automated clearing house transactions. *Id.*

Users can also elect to expedite their Instacash advance so it arrives within minutes by paying an optional express delivery fee (sometimes called a "Turbo Fee"). *Id.* ¶ 8 and Ex. A. Express delivery functions the same as express shipping for merchandise and expedited fund transfers offered by many popular digital wallet products. *Id.* MoneyLion also allows users to provide a tip to show their appreciation.

*Id.* Tips are completely optional and have no bearing on access to Instacash. *Id.* MoneyLion makes this clear to users before ever providing a tip. *Id.*

**2. Credit Builder Loan**

The Credit Builder Loan is a secured installment loan designed to help borrowers build positive payment history. *Id.* ¶ 9 and Ex. A. The Credit Builder Loan provides a consumer-friendly avenue for customers to improve their credit scores through MoneyLion's reporting of full, consistent payments on the loan to the national consumer reporting agencies. *Id.* Specifically, under the Credit Builder Loan program, rather than immediately disbursing the loan principal to the customer, MoneyLion holds the principal either partially or fully in an interest-bearing credit reserve account in the customer's name, with interest on those funds paid to the customer. *Id.* Once the borrower completes the required loan payments, MoneyLion releases the principal to the customer in full, with interest. *Id.*

Credit Builder Loans are available to customers who are members of MoneyLion's Credit Builder Plus membership program ("CB Plus") (formerly known as the "MoneyLion Plus" membership program), which includes a comprehensive package of financial products and services other than the Credit Builder Loan. *Id.* ¶ 10 and Ex. A. Those products include a managed investment account; credit monitoring and fraud alerts; the Lion's Share loyalty program, a robust cashback program for checking-account customers; and an array of financial literacy resources and budgeting tools. *Id.*

**B. The Arbitration Agreement and Class Waiver**

**1. Plaintiff Bisquera Agreed to the Arbitration Agreement**

On October 14, 2025, Plaintiff Bisquera entered into the Agreement for Resolving Disputes (previously defined as the "Arbitration Agreement") when creating her MoneyLion account. *Id.* ¶¶ 15–16 and Exs. B, C. At account opening, Bisquera was presented with a sign-up screen stating: "By creating an account, I

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

accept the Electronic Transaction Esign Consent, Arbitration & Waivers Agreements, Privacy Policy and Terms and Conditions." Each document referenced was hyperlinked to the agreement described. All agreements are also available to users in the profile section of their MoneyLion portal under "membership" and "membership documents," providing the opportunity to review those at any time after sign-up. On October 14, 2025, Bisquera selected "Create account" on the above prompt, which generated her electronically signed Agreement for Resolving Disputes. Plaintiff Bisquera completed this process on MoneyLion's mobile application. *Id.* ¶¶ 15–16 and Exs. B, C (Exhibit B is a true and correct copy of Plaintiff Bisquera's electronically signed Agreement for Resolving Disputes; Exhibit C consists of true and correct screen prints of what was presented to Bisquera on MoneyLion's mobile application during the signing process for the Agreement for Resolving Disputes).

On or about October 15, 2025, Plaintiff Bisquera also signed a Credit Builder Plus Membership Agreement, which expressly states that the Agreement for Resolving Disputes extends to that Membership Agreement and all disputes arising out of or related to it. *Id.* ¶ 23 and Ex. F. Plaintiff Bisquera completed this process on MoneyLion's mobile application. Specifically, Plaintiff Bisquera was presented with a sign-up screen stating: "By tapping 'Looks good,' I agree to the Credit Builder Plus terms. Additionally, I agree to sign up for FREE Credit Monitoring which includes monthly credit reports, alerts that keep me up to date with changes to my credit report and personalized offers from partners. I agree to the Credit Monitoring Authorization." The "Credit Builder Plus terms" include the following three agreements, all of which were hyperlinked within the terms: the Credit Builder Plus Membership Agreement, the Credit Monitoring Credit Report Authorization, and the MoneyLion Wallet Terms & Conditions. By clicking "Looks good," Bisquera agreed to the Credit Builder Plus terms, which generated her electronically signed Credit Builder Plus Membership Agreement. *Id.* ¶ 23 and Exs. F, G (Exhibit F is a true and





TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

correct copy of Plaintiff Bisquera's electronically signed MoneyLion Credit Builder Plus Membership Agreement; Exhibit G consists of true and correct screen prints of what was presented to Bisquera on MoneyLion's mobile application during the signing process for the Credit Builder Plus Membership Agreement).

Bisquera also obtained a Credit Builder Plus loan from MoneyLion on October 15, 2025. *Id.* ¶ 24 and Ex. H. (Exhibit H is a true and correct copy of Bisquera's Pledge and Security Agreement). In connection with obtaining the loan, Bisquera signed a Pledge and Security Agreement. The Pledge and Security Agreement expressly states:

> **NOTICE OF AGREEMENTS FOR RESOLVING DISPUTES AND ARBITRATION**. Before signing this Agreement, you should carefully review the Agreements for Resolving Disputes ("Disputes Agreement") to which you have already agreed and which includes the Arbitration Provision (as defined therein). The Disputes Agreement is incorporated herein by reference as if fully set forth herein, and shall be expressly deemed to include the Lender making the Loan to You.

*Id.* ¶ 24 and Ex. H. The Agreement for Resolving Disputes was available to Bisquera in the profile section of her MoneyLion portal under "membership" and "membership documents," providing Bisquera the opportunity to review the updated Agreement for Resolving Disputes at any time before or after signing. Bisquera electronically signed the Pledge and Security Agreement on October 15, 2025.

Thus, Plaintiff Bisquera agreed to the Arbitration Agreement on three separate occasions. *Id.* ¶¶ 15–16, 23, 24 and Exs. B, F, H.

**2. Plaintiff Jones Agreed to the Arbitration Agreement**

On April 29, 2019, Plaintiff Jones signed up for a MoneyLion account on MoneyLion's website. At that time, he entered into MoneyLion's prior version of the Agreement for Resolving Disputes. *Id.* ¶ 17. Additionally, on June 5, 2019, Jones





TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

entered into the MoneyLion Plus membership agreement, a membership that preceded the Credit Builder Plus membership. *Id.* ¶ 17.

On June 7, 2024, Jones entered into MoneyLion's updated 2024 Agreement for Resolving Disputes when accessing his account on MoneyLion's mobile application. *Id.* ¶ 18 and Ex. D. Specifically, when Jones logged into the mobile application, he was presented with a screen stating: "NEW TERMS AND POLICIES." The hyperlinked Agreement for Resolving Disputes was listed on the screen. Additionally, the screen stated: "By clicking '**Agree**,' you accept the updated MoneyLion Terms of Service, Agreement for Resolving Disputes, and Privacy Policy. . . ." Jones agreed by clicking "**Agree**" on the prompt, which generated his electronically signed Agreement for Resolving Disputes. (Exhibit D is a true and correct copy of Plaintiff Jones's electronically signed Agreement for Resolving Disputes; Exhibit E is a true and correct screen print of what was presented to Jones on MoneyLion's mobile application during the signing process for the Agreement for Resolving Disputes.)

Jones also obtained a Credit Builder Plus loan from MoneyLion on January 9, 2025. In connection with obtaining the loan, Jones signed a Pledge and Security Agreement. The Pledge and Security Agreement expressly states:

> **NOTICE OF AGREEMENTS FOR RESOLVING DISPUTES AND ARBITRATION**. Before signing this Agreement, you should carefully review the Agreements for Resolving Disputes ("Disputes Agreement") to which you have already agreed and which includes the Arbitration Provision (as defined therein). The Disputes Agreement is incorporated herein by reference as if fully set forth herein, and shall be expressly deemed to include the Lender making the Loan to You.

The Agreement for Resolving Disputes was available to Jones in the profile section of his MoneyLion portal under "membership" and "membership documents," providing Jones the opportunity to review the updated Agreement for Resolving

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

Disputes at any time before or after signing. Jones electronically signed the Pledge and Security Agreement on January 9, 2025. (Attached as Exhibit I is a true and correct copy of Jones's Pledge and Security Agreement).

Thus, Plaintiff Jones agreed to the Arbitration Agreement on two separate occasions. *Id.* ¶¶ 18, 25 and Exs. D, I.

**3. The Agreement Applies to All Claims and All MoneyLion Entities**

The Arbitration Agreement contains a conspicuous, bold, all-capital, disclosure at the top of the document:

> **PLEASE READ THIS AGREEMENT CAREFULLY. IT REQUIRES YOU AND MONEYLION TO RESOLVE DISPUTES THROUGH ARBITRATION OR SMALL CLAIMS COURT ON AN INDIVIDUAL BASIS RATHER THAN JURY TRIALS, CLASS ACTIONS, CLASS ARBITRATION, OR OTHER REPRESENTATIVE ACTIONS.**

*Id.*, Ex. B at 1 (emphasis in original). The Arbitration Agreement then continues, explaining it "outlines how disputes concerning Claims between [Plaintiffs] and MoneyLion will be resolved through our Informal Dispute Resolution Procedure, individual arbitration, or small claims court." *Id.* In turn, the Arbitration Agreement defines Claims broadly, including:

> [A]ny past, present, or future dispute or controversy between you and MoneyLion, whether or not presently known, that relates in any way to your use of or access to the MoneyLion Platform or to any product or service offered by or through the MoneyLion Platform[1]. . . . 'Claim' is

[1] "'MoneyLion Platform' means the MoneyLion website, www.moneylion.com; any of its subdomains; other websites owned or hosted by MoneyLion, including Engine



TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

> to be given the broadest reasonable meaning, and includes claims of every kind, including initial claims, counterclaims, cross-claims, and third-party claims, as well as claims based on any constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, torts, negligence, fraud or other intentional wrongs) and equity.

*Id.* ¶ 20, Ex. B at 2–3. The scope of "Claim" also specifically extends to "[c]laims arising out of or relating to any aspect of the relationship between us, whether based in contract; tort; fraud; misrepresentation; negligence; equity; or any constitutional, statutory, regulatory, or common law legal theory; Claims that arose before the existence of this or any prior agreement (including, but not limited to, Claims relating to advertising)." *Id.*, Ex. B at 5.

The Arbitration Agreement also defines "MoneyLion" to include "MoneyLion Technologies Inc. and all its past, present, and future parents, subsidiaries, affiliates, and related entities, including MoneyLion Inc., as well as all of MoneyLion's directors, officers, employees, consultants, service providers, licensees, agents, predecessors in interest, successors, and assigns." *Id.* at 2.

**4. Plaintiffs Agreed to a Class Action Waiver, Pre-Litigation Dispute Resolution, and Had the Opportunity to Opt-Out**

The Arbitration Agreement also includes a class action waiver. The agreement explains in multiple paragraphs that Plaintiffs waive their right to bring any litigation on a class basis, including the following:

- **YOU AND MONEYLION AGREE THAT EACH MAY BRING A CLAIM AGAINST THE OTHER ONLY IN YOUR OR ITS**

---

by MoneyLion, MoneyLion's marketplace platform; and MoneyLion's mobile application." Lobo Decl., Ex. B at 3.

**INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL.**

- **YOU AND MONEYLION AGREE THAT ANY ARBITRATION THAT TAKES PLACE WILL BE ON AN INDIVIDUAL BASIS. CLASS ARBITRATIONS, CLASS ACTIONS, AND OTHER REPRESENTATIVE ACTIONS OF ANY KIND ARE NOT PERMITTED.**

*Id.* at 1, 7.

The Arbitration Agreement also provides that the parties must complete an Informal Dispute Resolution Procedure as a condition precedent to initiating arbitration. *Id.* at 6. And the Arbitration Agreement permits customers to opt out within 30 days of entering into the Arbitration Agreement, which Plaintiffs did not do. Lobo Decl. ¶ 21 and Ex. B at 5.

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

### C. Plaintiffs' Claims against MoneyLion

Plaintiffs, along with their third named co-plaintiff, filed their initial complaint in this Court on June 15, 2026. ECF No. 1.[2]

In the Complaint, Plaintiffs assert six claims against MoneyLion, all arising from their use of MoneyLion's Instacash and Credit Builder Loan products: (1) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*; (2) violation of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693k; (3) violation of California Usury Law, Cal. Const. art. XV, § 1; Cal. Civ. Code § 1916-

[2] For clarity, MoneyLion separately moves to compel arbitration of Plaintiff Valencia's claims. MoneyLion is filing a separate motion as to Plaintiff Valencia because Valencia entered into MoneyLion's prior agreement for resolving disputes, which contains different language from the Agreement for Resolving Disputes governing Plaintiffs Bisquera and Jones's claims.

2; Cal. Fin. Code § 22303; (4) violation of the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (5) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; and (6) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq. See generally id.*

For example, Plaintiffs allege that MoneyLion's Instacash product is a "loan," purportedly triggering the protections of the statutes above. *E.g.*, *id.* ¶¶ 46, 173–87. They further allege that Instacash's optional tips and Turbo Fees should be treated as finance charges for Instacash advances. *See, e.g.*, *id.* ¶¶ 93–101. And they allege that these purported "loans" violate the statutes by failing to provide disclosures required by TILA, requiring pre-authorization of an electronic fund transfer as an extension of credit, and exceeding usury limits. *Id.* ¶¶ 173–212. Plaintiffs claim that Credit Builder Loans violate the same statutes, arguing the full monthly fee for the CB Plus membership program should be considered a finance charge and thus included in the APR for Credit Builder Loans. *Id.* ¶¶ 102–17.

Each time Plaintiffs requested an Instacash advance, they did so through either the MoneyLion website and/or the MoneyLion mobile application. Lobo Decl. ¶ 27. And every interaction Plaintiffs had with MoneyLion with respect to their Credit Builder Loan and the "CB Plus" program occurred through either the MoneyLion website and/or the MoneyLion mobile application. *Id.*

## III. III. LEGAL STANDARD

The Arbitration Agreement states that it evidences "a transaction of interstate commerce," and the FAA governs the "interpretation and enforcement" of the Arbitration Agreement. *Id.*, Ex. B at 5. Indeed, MoneyLion Technologies Inc. is a Delaware corporation with its principal place of business in New York, providing financial services to Plaintiffs, who are California residents. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 58 (2003) ("No elaborate explanation is needed to make



TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause"). Therefore, the Court should apply the FAA when deciding this motion.

Section 2 of the FAA mandates that a binding arbitration agreement in a contract "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Concepcion*, 563 U.S. at 339 (citations omitted).

The United States Supreme Court has repeatedly and consistently confirmed the FAA "requires courts to enforce the bargain of the parties to arbitrate" and "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21–22 (2011) (citations omitted; emphasis in original). The Supreme Court has also explained the FAA strongly favors the validity and enforceability of arbitration agreements, and that courts should enforce those agreements. *Epic Sys. Corp.*, 584 U.S. at 509; *Am. Express Co.*, 570 U.S. at 232–34; *Marmet Health Care Ctr.*, 565 U.S. at 532; *CompuCredit Corp.*, 565 U.S. at 98; *Concepcion*, 563 U.S. at 336, 343. The Ninth Circuit similarly stressed that arbitration agreements must be enforced according to their terms. *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 861 (9th Cir. 2021) ("[T]he FAA . . . 'places arbitration agreements on an equal footing with other contracts, requiring courts to enforce them according to their terms.'") (quoting *In re Grice*, 974 F.3d 950, 953 (9th Cir. 2020)); *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 935 (9th Cir. 2013).

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

Pursuant to the FAA, the Court should compel arbitration where: (1) a valid agreement to arbitrate exists; and (2) the agreement encompasses the claims at issue. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). An arbitration agreement governed by the FAA is presumed to be valid and enforceable. *See Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626–27 (1985). The party resisting arbitration bears the burden of showing the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

## IV. ARGUMENT

### A. The Arbitration Agreement is Valid and Enforceable

While the FAA governs the enforceability of the Arbitration Agreement according to its terms, state law governs whether a valid agreement to arbitrate exists. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." (citation omitted)); *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002) (holding that, where the underlying agreement provided for the application of Illinois law, "we must conclude that the Agreement incorporates the FAA's rules for arbitration, but Illinois substantive law applies in all other respects.").

The Arbitration Agreement provides that it "shall be governed by the laws of the State of New York, without regard to conflict of law principles." Lobo Decl., Ex. B at 11. As a result, New York contract law principles govern whether an arbitration agreement exists. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) ("The threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." (citations omitted)).





TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

"To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound." *Peterson v. Regina*, 935 F. Supp. 2d 628, 635 (S.D.N.Y. 2013) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)). A person "who signs or accepts a written contract is conclusively presumed to know its contents and to assent to them." *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (quoting *Metzger v. Aetna Ins. Co.*, 227 N.Y. 411, 416 (1920)). "[A] party is under an obligation to read a document before he or she signs it, and a party cannot generally avoid the effect of a [document] on the ground that he or she did not read it or know its contents." *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014) (alteration in original) (quotations omitted); *see also Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 74 (S.D.N.Y. 2012); *Mancilla v. ABM Indus., Inc.*, No. 20 CIV. 1330 (KPF), 2020 WL 4432122, at *7 (S.D.N.Y. July 29, 2020) (Plaintiff's contention "that she does not recall seeing the Mutual Arbitration Agreement . . . is insufficient to create a genuine issue of material fact as to whether the parties entered into an arbitration agreement."). Additionally, "[c]ourts around the country have recognized that an electronic click can suffice to signify the acceptance of a contract, and that there is nothing automatically offensive about such agreements, as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (alterations and citation omitted).

Here, Plaintiff Bisquera entered into the Arbitration Agreement with MoneyLion on October 14, 2025, when she created her MoneyLion account, and on October 15, 2025, both by signing the Credit Builder Plus Membership Agreement and the Pledge and Security Agreement. Lobo Decl. ¶¶ 15–16, 23, 24 and Exs. B, F, H. Plaintiff Jones did the same on June 7, 2024, when he signed into his account, and on January 9, 2025, when he signed his Credit Builder Pledge and Security

Agreement. Lobo Decl. ¶¶ 17–18, 25 and Exs. D, I. Plaintiffs thereafter used MoneyLion's products and services, including the Instacash and Credit Builder Loan products that form the basis of this action. *See* ECF No. 1 ¶¶ 9, 10, 77, 150.

Both Plaintiffs manifested their assent to the Arbitration Agreement in multiple overlapping ways, including by creating their accounts, and obtaining Credit Builder Plus loans. *See supra* § II.B.1.

Moreover, the Arbitration Agreement provided a 30-day opt-out period during which Plaintiffs could have rejected the arbitration provision by providing written notice. Lobo Decl. ¶ 21 and Ex. B at 5. Plaintiffs did not exercise that right. *Id.* ¶ 21. Courts routinely enforce arbitration agreements under these circumstances. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016); *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1077 (C.D. Cal. 2023).

Accordingly, the Arbitration Agreement is binding on Plaintiffs.

**B. Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreement**

An "order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors*, 473 U.S. at 626 (citation omitted); *see also Simula, Inc. v. Autoliv Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) ("The standard for demonstrating arbitrability is not high."). Where the scope of matters to be arbitrated is broad, as in the Arbitration Agreement, there is a heightened presumption of arbitrability such that, "'[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT&T Techs.*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v.*



TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

*Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584–85 (1960)); *see also Ferguson*, 733 F.3d at 937–38 (holding that the terms such as "any disputes," "all claims," and disputes "arising from my enrollment" are broad in scope); *Simula, Inc.*, 175 F.3d at 721 (holding that "language 'arising in connection with' reaches every dispute between the parties having significant relationship to the contract and all disputes having their origin or genesis in the contract"); *Dennis L. Christensen Gen. Bldg. Contractor, Inc. v. Gen. Bldg. Contractor, Inc.*, 952 F.2d 1073, 1077 (9th Cir. 1991) (noting that "presumption [of arbitrability] is particularly potent if the arbitration clause is broad.") (citation omitted).

Here, Plaintiffs' claims fall within the Arbitration Agreement in multiple ways.

First, the Arbitration Agreement applies to Claims, which are any "past, present, or future dispute or controversy between [Plaintiff] and MoneyLion . . . that relates in any way to your use of or access to the MoneyLion Platform or to any product or service offered by or through the MoneyLion Platform." Lobo Decl., Ex. B at 2. Plaintiffs' claims all involve Instacash and their Credit Builder Loan. Plaintiffs accessed each product through either the MoneyLion website and/or the MoneyLion mobile application. *Id.* ¶ 27. These claims undoubtedly relate to their use of or access to products or services offered through the MoneyLion Platform.

Second, the Arbitration Agreement broadly provides the term "Claim" includes those claims "based on any constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, torts, negligence, fraud or other intentional wrongs) and equity." *Id.*, Ex. B at 2–3. This broad language plainly encompasses Plaintiffs' claims, which they bring under TILA, EFTA, California Usury Law, False Advertising Law, CLRA, and UCL. These are precisely the types of statutory claims relating to a party's use of financial products that fall squarely within the scope of a broad arbitration provision. *See, e.g.*, *Buckley v. Am. Express Co.*, No. CV 12-00192 GAF (MRWx), 2012 WL 12894182, at *4 (C.D. Cal. Aug. 22, 2012) (compelling

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

arbitration of statutory claims arising from use of financial services where agreement covered disputes "arising from or relating to" the account relationship).

Moreover, the Supreme Court has made clear that statutory claims, including those under federal consumer protection statutes, are arbitrable absent a congressional command to the contrary. *CompuCredit Corp.*, 565 U.S. at 97–98 (holding that claims under the Credit Repair Organizations Act are subject to arbitration); *Shearson/Am. Express Inc.*, 482 U.S. at 227 ("The burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue."). No such congressional command exists here.

Because the Arbitration Agreement is valid and Plaintiffs' claims fall squarely within its scope, the Court should grant the motion to compel arbitration.

**C. The Court Should Compel Arbitration as to All Defendants**

Plaintiffs bring their Complaint against MoneyLion Technologies Inc., ML Plus LLC, and MoneyLion of California LLC. Each entity is entitled to enforce the Arbitration Agreement.

In the Arbitration Agreement, Plaintiffs agreed to arbitrate their claims against "MoneyLion." The Arbitration Agreement defines MoneyLion as "MoneyLion Technologies Inc. and all its past, present, and future parents, subsidiaries, affiliates, and related entities, including MoneyLion Inc., as well as all of MoneyLion's directors, officers, employees, consultants, service providers, licensees, agents, predecessors in interest, successors, and assigns." Lobo Decl. ¶ 19 and Ex. B at 2. MoneyLion Technologies Inc. is, therefore, identified by name in the Arbitration Agreement. And both ML Plus LLC and MoneyLion of California LLC are subsidiaries of MoneyLion Technologies Inc. *Id.* ¶ 5. As a result, each entity falls within the definition of "MoneyLion" in the Arbitration Agreement and can enforce the agreement. The Court should compel arbitration of Plaintiffs' claims against all three entities.

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

**D. The Court Should Enforce the Class Action Waiver**

In addition to enforcing the arbitration provision, the Court should enforce the class action waiver. Plaintiffs cannot assert their claims against MoneyLion on behalf of a purported class.

In the Arbitration Agreement, Plaintiffs waived their right to bring any litigation against MoneyLion on a purported class basis in multiple separate paragraphs, including the following:

- **PLEASE READ THIS AGREEMENT CAREFULLY. IT REQUIRES YOU AND MONEYLION TO RESOLVE DISPUTES THROUGH ARBITRATION OR SMALL CLAIMS COURT ON AN INDIVIDUAL BASIS RATHER THAN JURY TRIALS, CLASS ACTIONS, CLASS ARBITRATION, OR OTHER REPRESENTATIVE ACTIONS.**
- **YOU AND MONEYLION AGREE THAT EACH MAY BRING A CLAIM AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL.**
- **YOU AND MONEYLION AGREE THAT ANY ARBITRATION THAT TAKES PLACE WILL BE ON AN INDIVIDUAL BASIS. CLASS ARBITRATIONS, CLASS ACTIONS, AND OTHER REPRESENTATIVE ACTIONS OF ANY KIND ARE NOT PERMITTED.**

*Id.*, Ex. B at 1, 7.

"Class action waivers are enforceable under the FAA." *Xatruch v. Raising Canes U.S.A., LLC*, No. 2:25-cv-3341-DJC-SCR, 2026 WL 2517545, at *8 (E.D. Cal. Aug. 26, 2026) (citing *Epic Sys. Corp.*, 584 U.S. at 522–23). Courts in the Ninth

Circuit regularly enforce them in analogous contexts. *See*, *e.g.*, *Nieva v. Macys Retail Holdings, LLC*, CV 26-01284-MWF, 2026 WL 2350756, at *6 (C.D. Cal. June 30, 2026) ("The class arbitration waiver is enforceable.") (citations omitted); *Linares v. Keurig Dr. Pepper, Inc.*, ED CV 26-836 PA, 2026 WL 1365985, *6 (C.D. Cal. Apr. 23, 2026) ("The Court concludes that this class action waiver is valid and enforceable.") (citations omitted). The Court should do the same here.

**E. The Court Should Stay Plaintiffs' Individual Claims But Dismiss Their Purported Class Claims**

Section 3 of the FAA expressly provides that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court "***shall*** . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added); *see Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("§ 3 of the FAA compels the court to stay the proceeding."); *Collins v. Burlington N. R.R. Co.*, 867 F.2d 542, 545 (9th Cir. 1989) (remanding case for district court to consider whether to compel arbitration and enter stay); *see also Balar Equip. Corp. v. VT Leeboy, Inc.*, 336 F. App'x 688, 689 (9th Cir. 2009) (reversing decision with instructions to stay action pending completion of arbitration).

Because Plaintiffs' claims are subject to binding arbitration, the Court should stay Plaintiffs' individual claims pending completion of arbitration. The Court, however, should dismiss Plaintiffs' purported class claims given the binding class action waiver. *See, e.g., Linares*, 2026 U.S. Dist. LEXIS 109849 at *7 ("For all of the foregoing reasons, the Court grants Defendants' Motion to Compel Arbitration. Plaintiff's class claims are dismissed, and Plaintiff's individual claims are compelled to arbitration.").

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

## V. CONCLUSION

MoneyLion Technologies Inc., ML Plus LLC, and MoneyLion of California LLC respectfully request the Court enter an Order dismissing Plaintiffs Elena Bisquera's and Jason Jones's class claims and compelling them to arbitrate their individual claims pursuant to the terms of the Arbitration Agreement.

Dated: September 14, 2026 TROUTMAN PEPPER LOCKE LLP

By: */s/ Elizabeth Holt Andrews*
Elizabeth Holt Andrews

*Attorneys for Defendants*
MoneyLion Technologies Inc.,
MoneyLion of California LLC,
and ML Plus LLC

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants MoneyLion Technologies Inc., MoneyLion of California LLC, and ML Plus LLC, certifies that this brief contains 5,417 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 14, 2026 */s/ Elizabeth Holt Andrews*
Elizabeth Holt Andrews