TROUTMAN PEPPER LOCKE LLP
Elizabeth Holt Andrews (SBN 263206)
elizabeth.andrews@troutman.com
Three Embarcadero Center, Suite 800
San Francisco, California 94111-4057
Telephone: 415.477.5700
Facsimile: 415.477.5710

*Attorneys for Defendants*
MoneyLion Technologies Inc.,
MoneyLion of California LLC,
and ML Plus LLC

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION—RIVERSIDE**

Elena Bisquera, et al.,

Plaintiffs,

v.

MoneyLion Technologies Inc., et al.,

Defendants.

Case No. 5:26-cv-03296-SSS-E

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION AS TO PLAINTIFF CHRISTOPHER VALENCIA**

Date: October 23, 2026
Time: 2:00 p.m.
Courtroom: 2 (via Zoom)
Judge: Hon. Sunshine S. Sykes

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

# TABLE OF CONTENTS

Page

I. INTRODUCTION ... 1
II. FACTUAL AND PROCEDURAL BACKGROUND ... 2
A. Instacash and Credit Builder Background ... 2
1. Instacash ... 2
2. Credit Builder Loan ... 3
B. The Arbitration Agreement and Class Waiver ... 3
1. Plaintiff Valencia Agreed to the Arbitration Agreement ... 3
2. The Agreement Applies to All Claims and All MoneyLion Entities ... 6
3. Plaintiff Agreed to a Class Action Waiver, Pre-Litigation Dispute Resolution, and Had the Opportunity to Opt-Out ... 7
C. Plaintiff’s Claims against MoneyLion ... 8
III. III. LEGAL STANDARD ... 9
IV. IV. ARGUMENT ... 10
A. The Arbitration Agreement is Valid and Enforceable ... 10
B. Plaintiff’s Claims Fall Within the Scope of the Arbitration Agreement ... 13
C. C. The Court Should Compel Arbitration as to All Defendants ... 15
D. D. The Court Should Enforce the Class Action Waiver ... 15
E. E. The Court Should Stay Plaintiff’s Individual Claims But Dismiss His Purported Class Claims ... 16
V. CONCLUSION ... 16
CERTIFICATE OF COMPLIANCE ... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) .......... 1, 10

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 1, 9, 10

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) .......... 13

*Balar Equip. Corp. v. VT Leeboy, Inc.*,
336 F. App'x 688 (9th Cir. 2009) .......... 16

*Buckley v. Am. Express Co.*,
No. CV 12-00192 GAF, 2012 WL 12894182
(C.D. Cal. Aug. 22, 2012) .......... 14

*Capriole v. Uber Techs., Inc.*,
7 F.4th 854 (9th Cir. 2021) .......... 10

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .......... 10

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) .......... 9

*Collins v. Burlington N. R.R. Co.*,
867 F.2d 542 (9th Cir. 1989) .......... 16

*CompuCredit Corp. v. Greenwood*,
565 U.S. 95 (2012) .......... 1, 10, 14

*Dennis L. Christensen Gen. Bldg. Contractor, Inc. v. Gen. Bldg. Contractor, Inc.*,
952 F.2d 1073 (9th Cir. 1991) .......... 13

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .......... 1, 10

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

*Ferguson v. Corinthian Colls., Inc.*,
733 F.3d 928 (9th Cir. 2013) .......... 10, 13

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) .......... 11

*Golden Key Realty, Inc. v. Mantas*,
699 P.2d 730 (Utah 1985) .......... 11

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) .......... 10

*John Call Eng'g, Inc. v. Manti City Corp.*,
743 P.2d 1205 (Utah 1987) .......... 11

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011) .......... 10

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019) .......... 1

*Lee v. DoNotPay, Inc.*,
683 F. Supp. 3d 1062 (C.D. Cal. 2023) .......... 12

*Linares v. Keurig Dr. Pepper, Inc.*,
ED CV 26-836 PA, 2026 WL 1365985 (C.D. Cal. Apr. 23, 2026) .......... 15, 16

*Marmet Health Care Ctr., Inc. v. Brown*,
565 U.S. 530 (2012) .......... 1, 10

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) .......... 10, 13

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) .......... 12

*Nieva v. Macys Retail Holdings, LLC*,
CV 26-01284-MWF, 2026 WL 2350756 (C.D. Cal. June 30, 2026) .......... 15

*Pagano v. NordicTrack, Inc.*,
749 F. Supp. 3d 1183 (D. Utah 2024) .......... 11

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

*Shearson/Am. Express Inc. v. McMahon*,
482 U.S. 220 (1987) .......... 10, 14

*Simula, Inc. v. Autoliv Inc.*,
175 F.3d 716 (9th Cir. 1999) .......... 13

*Singh v. Dish Network, LLC*,
Case No. 2:18-cv-00856-DAK, 2019 WL 3037882
(D. Utah July 11, 2019) .......... 11

*Smith v. Spizzirri*,
601 U.S. 472 (2024) .......... 16

*Sovak v. Chugai Pharm. Co.*,
280 F.3d 1266 (9th Cir. 2002) .......... 11

*Xatruch v. Raising Canes U.S.A, LLC*,
No. 2:25-cv-3341-DJC-SCR, 2026 WL 2517545
(E.D. Cal. Aug. 26, 2026) .......... 15

**Statutes**

9 U.S.C. §§ 1 *et seq.* .......... 1, 9, 16

15 U.S.C. §§ 1601 *et seq.* .......... 8, 14

15 U.S.C. § 1693k .......... 8, 14

15 U.S.C. § 7001 .......... 11

Cal. Civ. Code § 1916-2 .......... 8

Cal. Fin. Code § 22303 .......... 8

Cal. Civ. Code §§ 1750 *et seq.* .......... 8

Cal. Bus. & Prof. Code §§ 17200 *et seq.* .......... 8

Cal. Bus. & Prof. Code §§ 17500 *et seq.* .......... 8

Utah Stat. Ann. § 46-4-201 .......... 11

**Other Authorities**

Cal. Const. art. XV, § 1 .......... 8

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

MoneyLion Technologies Inc., ML Plus LLC, and MoneyLion of California LLC (collectively, "MoneyLion") move to compel arbitration of Christopher Valencia's ("Plaintiff") individual claims pursuant to an arbitration agreement and dismiss his purported class claims pursuant to a class action waiver.

Regardless of their merits (or lack thereof), Plaintiff's claims against MoneyLion must be resolved in arbitration pursuant to the terms of the Agreement for Resolving Disputes ("Arbitration Agreement") to which Plaintiff agreed. The Arbitration Agreement broadly encompasses any "Claim," which means "any past, present, or future claim, dispute or controversy between you [Plaintiff] and us [MoneyLion], whether or not presently known, that arises from or relates in any way to this Agreement or any services, programs, loans, investments or other financial services you request or we provide to you or on your behalf." The Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA"), mandates that a binding arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The United States Supreme Court has repeatedly and consistently confirmed that agreements to arbitrate are fully enforceable as written. *See Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 183-84 (2019); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 509 (2018); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232-34 (2013); *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532 (2012); *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97-98 (2012); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336, 343 (2011).

Similarly, Plaintiff agreed to a class action waiver. Like agreements to arbitrate, the United States Supreme Court has consistently confirmed that class action waivers are binding and enforceable. *See Epic Sys. Corp.*, 584 U.S. at 502 ("Congress has

instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings.”).

Accordingly, the Court should grant the motion and enter an Order: (1) directing Plaintiff, if he wishes to continue pursuing his claims, to arbitrate the claims on an individual basis with the American Arbitration Association, JAMS, or any other company by mutual agreement of the parties pursuant to the terms of the binding Arbitration Agreement; (2) dismissing Plaintiff’s purported class claims pursuant to the class action waiver; and (3) staying Plaintiff’s individual claims pending completion of arbitration.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Instacash and Credit Builder Background

#### 1. Instacash

MoneyLion offers an array of products for people seeking financial education and empowerment. One such product is Instacash, which is an earned wage access product that allows users to request an advance of their earned wages, with approved users qualifying for advances up to $500. *See* ECF No. 1 at ¶ 39; Declaration of Malavika Lobo (“Lobo Decl.”) ¶ 7 and Ex. A. To sign up for Instacash, users provide their bank account information to MoneyLion, and MoneyLion decides whether to approve them for Instacash. *See* ECF No. 1 at ¶¶ 41-42; Lobo Decl. ¶ 7 and Ex. A. Instacash has no impact on a user’s credit score, and a credit check is not required. *Id.* ¶ 7 and Ex. A. Users who receive an Instacash advance can do so for free—there are no interest charges or fees for Instacash advances sent through standard delivery, which takes between one and five business days due to processing times for automated clearing house transactions. *Id.*

Users can also elect to expedite their Instacash advance so it arrives within minutes by paying an optional express delivery fee (sometimes called a “Turbo Fee”). *Id.* ¶ 8 and Ex. A. Express delivery functions the same as express shipping for



TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

merchandise and expedited fund transfers offered by many popular digital wallet products. *Id.* MoneyLion also allows users to provide a tip to show their appreciation. *Id.* Tips are completely optional and have no bearing on access to Instacash. *Id.* MoneyLion makes this clear to users before ever providing a tip. *Id.*

**2. Credit Builder Loan**

The Credit Builder Loan is a secured installment loan designed to help borrowers build positive payment history. *Id.* ¶ 9 and Ex. A. The Credit Builder Loan provides a consumer-friendly avenue for customers to improve their credit scores through MoneyLion's reporting of full, consistent payments on the loan to the national consumer reporting agencies. *Id.* Specifically, under the Credit Builder Loan program, rather than immediately disbursing the loan principal to the customer, MoneyLion holds the principal either partially or fully in an interest-bearing credit reserve account in the customer's name, with interest on those funds paid to the customer. *Id.* Once the borrower completes the required loan payments, MoneyLion releases the principal to the customer in full, with interest. *Id.*

Credit Builder Loans are available to customers who are members of MoneyLion's Credit Builder Plus membership program ("CB Plus"), which includes a comprehensive package of financial products and services other than the Credit Builder Loan. *Id.* ¶ 10 and Ex. A. Those products include a managed investment account; credit monitoring and fraud alerts; the Lion's Share loyalty program, a robust cashback program for checking-account customers; and an array of financial literacy resources and budgeting tools. *Id.*

**B. The Arbitration Agreement and Class Waiver**

**1. Plaintiff Valencia Agreed to the Arbitration Agreement**

On February 19, 2021, Plaintiff Valencia entered into the Agreement for Resolving Disputes (previously defined as the "Arbitration Agreement") when creating his MoneyLion account through the MoneyLion mobile application. *Id.* ¶ 15

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

and Ex. B. At account opening, MoneyLion presented Plaintiff with a prompt to agree to its Terms of Service and its Agreement for Resolving Disputes, which he did. Plaintiff went through the following steps:

- Plaintiff Valencia electronically checked two boxes indicating as follows: "I agree to the Electronic Transaction and Consent" and "I agree to the following agreements: Arbitration & Waiver Agreements; Privacy Notice; Terms and Conditions; and Membership Agreement." The phrase "Arbitration & Waiver Agreements" hyperlinked to the July 29, 2019 version of MoneyLion's Agreement for Resolving Disputes.
- Upon selecting all required checkboxes on the screen, the "Create account" button would illuminate and enable the user (Plaintiff Valencia) to proceed.
- Plaintiff Valencia then selected "Create account" on the above prompt, which generated his electronically signed Agreement for Resolving Disputes.

*Id.* ¶ 15 and Exs. B, C (Exhibit B is a true and correct copy of Plaintiff Valencia's electronically signed Agreement for Resolving Disputes. Exhibit C consists of true and correct screen prints of Valencia's signing process for the Agreement for Resolving Disputes). *Id.* ¶ 15.

On or about June 12, 2021, Plaintiff Valencia also signed a Credit Builder Plus Membership Agreement, which expressly states that the Agreement for Resolving Disputes extends to that Membership Agreement and all disputes arising out of or related to it. *Id.* ¶ 20 and Ex. D. To sign the Credit Builder Plus Membership Agreement, Plaintiff Valencia went through the following steps:

- Plaintiff Valencia electronically checked the box next to the statement "I have read and agree to[,]" which appears above "Electronic Transaction Esign Consent."
- Plaintiff Valencia also electronically checked the box next to the statement "I have read and agree to[,]" which appears above "Automatic Payment

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

Authorization; Investment Advisory Agreement; Agreements For Resolving Disputes; Membership Agreement."

- Upon selecting all required checkboxes on the screen, the "Activate your membership" button would illuminate and enable the user (Plaintiff Valencia) to proceed. Below the "Activate your membership" button is the following language: "By tapping 'Activate your membership,' you [Christopher Valencia], agree this constitutes your signature and that you agree to be bound by the terms of the agreements displayed above."
- By checking both checkboxes and then selecting "Activate your membership," Plaintiff Valencia generated his electronically signed MoneyLion Credit Builder Plus Membership Agreement.

*Id.* ¶ 20 and Exs. D, E (Exhibit D is a true and correct copy of Plaintiff Valencia's electronically signed MoneyLion Credit Builder Plus Membership Agreement. Exhibit E consists of true and correct screen prints of Valencia's signing process for the MoneyLion Credit Builder Plus Membership Agreement).

Valencia also obtained a Credit Builder Plus loan from MoneyLion on June 12, 2021. *Id.* ¶ 21 and Ex. F. In connection with obtaining the loan, Valencia signed a Pledge and Security Agreement. The Pledge and Security Agreement expressly states:

> **NOTICE OF AGREEMENTS FOR RESOLVING DISPUTES AND ARBITRATION**. Before signing this Agreement, you should carefully review the Agreements for Resolving Disputes ("Disputes Agreement") to which you have already agreed and which includes the Arbitration Provision (as defined therein). The Disputes Agreement is incorporated herein by reference as if fully set forth herein, and shall be expressly deemed to include the Lender making the Loan to You.

*Id.* ¶ 21 and Ex. F. (Exhibit F is a true and correct copy of Plaintiff Valencia's Pledge and Security Agreement). The Agreement for Resolving Disputes was available to

Valencia in the profile section of his MoneyLion portal under "membership" and "membership documents," providing Valencia the opportunity to review the updated Agreement for Resolving Disputes at any time before or after signing. Valencia electronically signed the Pledge and Security Agreement on June 12, 2021.

Thus, Plaintiff Valencia agreed to the Arbitration Agreement on three separate occasions. *Id.* ¶¶ 15, 20, 21 and Exs. B, D, F.

### 2. The Agreement Applies to All Claims and All MoneyLion Entities

The Arbitration Agreement contains a conspicuous, bold, all-capital disclosure:

> **VERY IMPORTANT. READ THIS ARBITRATION PROVISION CAREFULLY. IT SETS FORTH WHEN AND HOW CLAIMS WILL BE ARBITRATED INSTEAD OF LITIGATED IN COURT. IF YOU DON'T REJECT THIS ARBITRATION PROVISION IN ACCORDANCE WITH SECTION 1 BELOW, UNLESS PROHIBITED BY APPLICABLE LAW, IT WILL HAVE A SUBSTANTIAL IMPACT ON THE WAY IN WHICH YOU OR WE RESOLVE ANY CLAIM NOW OR IN THE FUTURE.**

*Id.*, Ex. B at 1-2 (emphasis in original). The Arbitration Agreement explains it "sets forth how we [MoneyLion] and you [Plaintiff] will resolve disputes concerning 'Claims.'" *Id.* at 1. In turn, the Arbitration Agreement defines Claims broadly, including:

> [A]ny past, present, or future claim, dispute or controversy between you [Plaintiff] and us [MoneyLion], whether or not presently known, that arises from or relates in any way to this Agreement or any services, programs, loans, investments or other financial services you request or we provide to you or on your behalf . . . 'Claim' is to be given the





TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

> broadest possible meaning and includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims, and third-party claims, and claims based on any constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, torts, negligence, fraud or other intentional wrongs) and equity.

*Id.* ¶ 17, Ex. B at 1. The scope of "Claim" also specifically extends to "disputes that seek relief of any type, including damages and/or injunctive, declaratory or other equitable relief." *Id.*, Ex. B at 1.

The Arbitration Agreement defines "we" or "our" as "the company that is providing you the service or loan" and includes "all parent companies, subsidiaries, sister subsidiaries and affiliates of ours, and our and their employees, directors, officers, shareholders, governors, managers and members." This definition encompasses ML Plus LLC and MoneyLion of California LLC. *Id.* at 2.

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

**3. Plaintiff Agreed to a Class Action Waiver, Pre-Litigation Dispute Resolution, and Had the Opportunity to Opt-Out**

The Arbitration Agreement also includes a class action waiver. The agreement explains that Plaintiff waives his right to bring any litigation on a class basis. *Id.* at 3.

The Arbitration Agreement also provides that the parties must complete a Pre-Dispute Resolution Procedure. *Id.* at 1. And the Arbitration Agreement permits customers to opt out within 30 days of entering into the Arbitration Agreement, which Plaintiff did not do. Lobo Decl. ¶ 18 and Ex. B at 2.

**C. Plaintiff's Claims against MoneyLion**

Plaintiff, along with his second and third named co-plaintiffs, filed their initial complaint in this Court on June 15, 2026. ECF No. 1.[1]

In the Complaint, Plaintiff asserts six claims against MoneyLion, all arising from his use of MoneyLion's Instacash and Credit Builder Loan products: (1) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*; (2) violation of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693k; (3) violation of California Usury Law, Cal. Const. art. XV, § 1; Cal. Civ. Code § 1916-2; Cal. Fin. Code § 22303; (4) violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*; (5) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; and (6) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq. See generally id.*

For example, Plaintiff alleges that MoneyLion's Instacash product is a "loan," purportedly triggering the protections of the statutes above. *E.g., id.* ¶¶ 46, 173-87. He further alleges that Instacash's optional tips and Turbo Fees should be treated as finance charges for Instacash advances. *See, e.g., id.* ¶¶ 93-101. And he alleges that these purported "loans" violate the statutes by failing to provide disclosures required by TILA, requiring pre-authorization of an electronic fund transfer as an extension of credit, and exceeding usury limits. *Id.* ¶¶ 173-212. Plaintiff claims that Credit Builder Loans violate the same statutes, arguing the full monthly fee for the CB Plus

[1] For clarity, MoneyLion separately moves to compel arbitration of Plaintiffs Bisquera and Jones's claims. MoneyLion is filing a separate motion as to Plaintiffs Bisquera and Jones because Valencia entered into MoneyLion's prior agreement for resolving disputes, which contains different language from the Agreement for Resolving Disputes governing Plaintiffs Bisquera and Jones' claims.



TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

membership program should be considered a finance charge and thus included in the APR for Credit Builder Loans. *Id.* ¶¶ 102-17.

Each time Plaintiff requested an Instacash advance, he did so through either the MoneyLion website and/or the MoneyLion mobile application. Lobo Decl. ¶ 23. And every interaction Plaintiff had with MoneyLion with respect to his Credit Builder Loan and the "CB Plus" program occurred through either the MoneyLion website and/or the MoneyLion mobile application. *Id.*

## III. III. LEGAL STANDARD

The Arbitration Agreement states that it evidences "a transaction involving interstate commerce," and the FAA governs the Arbitration Agreement. *Id.*, Ex. B at 3-4. Indeed, MoneyLion Technologies Inc. is a Delaware corporation with its principal place of business in New York, providing financial services to Plaintiff, who is a California resident. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 58 (2003) ("No elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause"). Therefore, the Court should apply the FAA when deciding this motion.

Section 2 of the FAA mandates that a binding arbitration agreement in a contract "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Concepcion*, 563 U.S. at 339 (citations omitted).

The United States Supreme Court has repeatedly and consistently confirmed the FAA "requires courts to enforce the bargain of the parties to arbitrate" and "leaves





TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21-22 (2011) (citations omitted; emphasis in original). The Supreme Court has also explained the FAA strongly favors the validity and enforceability of arbitration agreements and requires courts to enforce those agreements. *Epic Sys. Corp.*, 584 U.S. at 509; *Am. Express Co.*, 570 U.S. at 232-34; *Marmet Health Care Ctr.*, 565 U.S. at 532; *CompuCredit Corp.*, 565 U.S. at 98; *Concepcion*, 563 U.S. at 336, 343. The Ninth Circuit similarly stressed that arbitration agreements must be enforced according to their terms. *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 861 (9th Cir. 2021) ("[T]he FAA . . . 'places arbitration agreements on an equal footing with other contracts, requiring courts to enforce them according to their terms.'") (quoting *In re Grice*, 974 F.3d 950, 953 (9th Cir. 2020)); *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 935 (9th Cir. 2013).

Pursuant to the FAA, the Court should compel arbitration where: (1) a valid agreement to arbitrate exists; and (2) the agreement encompasses the claims at issue. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). An arbitration agreement governed by the FAA is presumed to be valid and enforceable. *See Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985). The party resisting arbitration bears the burden of showing the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

## IV. IV. ARGUMENT

### A. The Arbitration Agreement is Valid and Enforceable

While the FAA governs the enforceability of the Arbitration Agreement according to its terms, state law governs whether a valid agreement to arbitrate exists.

*See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." (citation omitted)); *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002) (holding that, where the underlying agreement provided for the application of Illinois law, "we must conclude that the Agreement incorporates the FAA's rules for arbitration, but Illinois substantive law applies in all other respects.").

The Arbitration Agreement provides that to the extent state law bears on the enforceability, "Utah law shall govern." Lobo Decl., Ex. B at 4. As a result, Utah contract law principles govern whether an arbitration agreement exists. Under Utah law, an enforceable contract exists when there is a valid offer, acceptance, and consideration. *Golden Key Realty, Inc. v. Mantas*, 699 P.2d 730, 732 (Utah 1985). And under both federal and Utah law, electronic signatures may be used to effectively execute a contract. *See, e.g.*, 15 U.S.C. § 7001; Utah Stat. Ann. § 46-4-201 (providing that "(2) [a] contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation" and "(4) [i]f a law requires a signature, an electronic signature satisfies the law."). "Utah law has long held that ignorance of a contract, failure to read a contract, or a lapse in memory regarding one's prior assent to a contract cannot provide a defense to the formation of such an agreement." *Pagano v. NordicTrack, Inc.*, 749 F. Supp. 3d 1183, 1192 (D. Utah 2024); *see, e.g., John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1208 (Utah 1987) ("A party may not sign a contract and thereafter assert ignorance or failure to read the contract as a defense."); *Singh v. Dish Network, LLC*, Case No. 2:18-cv-00856-DAK, 2019 WL 3037882, at *2, (D. Utah July 11, 2019) (same).

Here, Plaintiff Valencia entered into the Arbitration Agreement with MoneyLion on February 19, 2021 when he created his MoneyLion account. Lobo



TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

Decl. ¶ 15, Ex. B. Plaintiff manifested his assent to the Arbitration Agreement in multiple overlapping ways, including by checking a box demonstrating he agreed to the Arbitration Agreement and by clicking the "Create Account" button to further confirm his agreement. *See supra* § II.B.1. Plaintiff Valencia then re-confirmed this agreement on or about June 12, 2021 when he signed a Credit Builder Plus Membership Agreement, which expressly states that the Arbitration Agreement extends to that Membership Agreement and all disputes arising out of or related to it. Lobo Decl. ¶ 20, Ex. D. Again, Plaintiff Valencia confirmed his agreement in multiple different ways, including by checking a box demonstrating he agreed to the Credit Builder Plus Membership Agreement and by clicking the "Activate your membership" button to further confirm his agreement. Further, Valencia obtained a Credit Builder Plus loan from MoneyLion on June 12, 2021. In connection with obtaining the loan, Valencia signed a Pledge and Security Agreement incorporating the Arbitration Agreement. Lobo Decl. ¶ 21, Ex. F. *See supra* § II.B.2. Plaintiff thereafter used MoneyLion's products and services, including the Instacash and Credit Builder Loan products that form the basis of this action. *See* ECF No. 1 ¶¶ 9, 10, 77, 150.

Moreover, the Arbitration Agreement provided a 30-day opt-out period during which Plaintiff could have rejected the arbitration provision by providing written notice. Lobo Decl. ¶ 18 and Ex. B at 2. Plaintiff did not exercise that right. *Id.* ¶ 18. Courts routinely enforce arbitration agreements under these circumstances. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016); *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1077 (C.D. Cal. 2023).

Accordingly, the Arbitration Agreement is binding on Plaintiff.

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

### B. Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement

An "order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors*, 473 U.S. at 626 (citation omitted); *see also Simula, Inc. v. Autoliv Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) ("The standard for demonstrating arbitrability is not high."). Where the scope of matters to be arbitrated is broad, as in the Arbitration Agreement, there is a heightened presumption of arbitrability such that, "'[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT&T Techs.*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85 (1960)); *see also Ferguson*, 733 F.3d at 937-38 (holding that the terms such as "any disputes," "all claims," and disputes "arising from my enrollment" are broad in scope); *Simula, Inc.*, 175 F.3d at 721 (holding that "language 'arising in connection with' reaches every dispute between the parties having significant relationship to the contract and all disputes having their origin or genesis in the contract"); *Dennis L. Christensen Gen. Bldg. Contractor, Inc. v. Gen. Bldg. Contractor, Inc.*, 952 F.2d 1073, 1077 (9th Cir. 1991) (noting that "presumption [of arbitrability] is particularly potent if the arbitration clause is broad.") (citation omitted).

Here, Plaintiff's claims fall within the Arbitration Agreement in multiple ways. First, the Arbitration Agreement applies to Claims, which are any "past, present, or future claim, dispute, or controversy between [Plaintiff] and [MoneyLion] . . . that arises from or relates in any way to this Agreement or any services, programs, loans,

investments, or other financial services you request or we provide to you or on your behalf." Lobo Decl., Ex. B at 1. Plaintiff's claims all involve Instacash and his Credit Builder Loan. Plaintiff accessed each product through either the MoneyLion website and/or the MoneyLion mobile application. *Id.* ¶ 23. These claims undoubtedly relate to his use of or access to services, programs, loans, investments or other financial services he requested or MoneyLion provided on his behalf, as defined in the Arbitration Agreement. .

Second, the Arbitration Agreement broadly provides the term "Claim" includes those claims "based on any constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, torts, negligence, fraud or other intentional wrongs) and equity." *Id.*, Ex. B at 1. This broad language plainly encompasses Plaintiff's claims, which he brings under TILA, EFTA, California Usury Law, False Advertising Law, CLRA, and UCL. These are precisely the types of statutory claims relating to a party's use of financial products that fall squarely within the scope of a broad arbitration provision. *See, e.g.*, *Buckley v. Am. Express Co.*, No. CV 12-00192 GAF (MRWx), 2012 WL 12894182, at *4 (C.D. Cal. Aug. 22, 2012) (compelling arbitration of statutory claims arising from use of financial services where agreement covered disputes "arising from or relating to" the account relationship).

Moreover, the Supreme Court has made clear that statutory claims, including those under federal consumer protection statutes, are arbitrable absent a congressional command to the contrary. *CompuCredit Corp.*, 565 U.S. at 97-98 (holding that claims under the Credit Repair Organizations Act are subject to arbitration); *Shearson/Am. Express Inc.*, 482 U.S. at 227 ("The burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue."). No such congressional command exists here.

Because the Arbitration Agreement is valid and Plaintiff's claims fall squarely within its scope, the Court should grant the motion to compel arbitration.



TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

**C. C. The Court Should Compel Arbitration as to All Defendants**

Plaintiff brings his Complaint against MoneyLion Technologies Inc., ML Plus LLC, and MoneyLion of California LLC. Each entity is entitled to enforce the Arbitration Agreement.

In the Arbitration Agreement, Plaintiff agreed to arbitrate his claims against the company that is providing [him] the service or loan. The Arbitration Agreement defines this to include "all parent companies, subsidiaries, sister subsidiaries and affiliates of ours, and our and their employees, directors, officers, shareholders, governors, managers and members." This definition encompasses ML Plus LLC and MoneyLion of California LLC. Lobo Decl. ¶ 16 and Ex. B at 2. Both ML Plus LLC and MoneyLion of California LLC are subsidiaries of MoneyLion Technologies Inc. *Id*. ¶ 5. As a result, each entity falls within the definition of the company providing Valencia the service or loan in the Arbitration Agreement and can enforce the agreement. The Court should compel arbitration of Plaintiff's claims against all three entities.

**D. D. The Court Should Enforce the Class Action Waiver**

In addition to enforcing the arbitration provision, the Court should enforce the class action waiver. Plaintiff cannot assert his claims against MoneyLion on behalf of a purported class. In the Arbitration Agreement, Plaintiff waived his right to bring any litigation against MoneyLion on a purported class basis. *Id.*, Ex. B at 3.

"Class action waivers are enforceable under the FAA." *Xatruch v. Raising Canes U.S.A, LLC*, No. 2:25-cv-3341-DJC-SCR, 2026 WL 2517545, at *8 (E.D. Cal. Aug. 26, 2026) (citing *Epic Sys. Corp.*, 584 U.S. at 522-23). Courts in the Ninth Circuit regularly enforce them in analogous contexts. *See, e.g.*, *Nieva v. Macys Retail Holdings, LLC*, CV 26-01284-MWF, 2026 WL 2350756, at *6 (C.D. Cal. June 30, 2026) ("The class arbitration waiver is enforceable.") (citations omitted); *Linares v. Keurig Dr. Pepper, Inc.*, ED CV 26-836 PA, 2026 WL 1365985, *6 (C.D. Cal. Apr.

23, 2026) ("The Court concludes that this class action waiver is valid and enforceable.") (citations omitted). The Court should do the same here.

**E. E. The Court Should Stay Plaintiff's Individual Claims But Dismiss His Purported Class Claims**

Section 3 of the FAA expressly provides that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court "***shall*** . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added); *see Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("§ 3 of the FAA compels the court to stay the proceeding."); *Collins v. Burlington N. R.R. Co.*, 867 F.2d 542, 545 (9th Cir. 1989) (remanding case for district court to consider whether to compel arbitration and enter stay); *see also Balar Equip. Corp. v. VT Leeboy, Inc.*, 336 F. App'x 688, 689 (9th Cir. 2009) (reversing decision with instructions to stay action pending completion of arbitration).

Because Plaintiff's claims are subject to binding arbitration, the Court should stay Plaintiff's individual claims pending completion of arbitration. The Court, however, should dismiss Plaintiff's purported class claims given the binding class action waiver. *See, e.g.*, *Linares*, 2026 U.S. Dist. LEXIS 109849 at *7 ("For all of the foregoing reasons, the Court grants Defendants' Motion to Compel Arbitration. Plaintiff's class claims are dismissed, and Plaintiff's individual claims are compelled to arbitration.").

**V. CONCLUSION**

MoneyLion Technologies Inc., ML Plus LLC, and MoneyLion of California LLC respectfully request the Court enter an Order dismissing Plaintiff Christopher Valencia's class claims and compelling him to arbitrate his individual claims pursuant to the terms of the Arbitration Agreement.

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

Dated: September 14, 2026

TROUTMAN PEPPER LOCKE LLP

By: /s/ Elizabeth Holt Andrews
Elizabeth Holt Andrews

*Attorneys for Defendants*
MoneyLion Technologies Inc.,
MoneyLion of California LLC,
and ML Plus LLC

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants MoneyLion Technologies Inc., MoneyLion of California LLC, and ML Plus LLC, certifies that this brief contains 4,785 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 14, 2026

*/s/ Elizabeth Holt Andrews*
Elizabeth Holt Andrews