PAK HEINZ PLLC
Noah Heinz (Bar No. 368281)
Noah.Heinz@pakheinz.com
Albert Pak (Bar No. 361123)
Albert.Pak@pakheinz.com
20 F St. NW, 7th Floor
Washington, D.C. 20001
Telephone: (202) 505-6354

*Attorneys for Plaintiffs and all those similarly situated*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION–RIVERSIDE**

| | |
|---|---|
| Elena Bisquera, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>MoneyLion Technologies, Inc., et al.,<br><br>Defendants. | Case No. 5:26-cv-03296-SSS-E<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AS TO PLAINTIFF CHRISTOPHER VALENCIA**<br><br>Hearing date: October 23, 2026<br>Time: 2:00 p.m.<br>Judge: Hon. Sunshine S. Sykes<br>Courtroom: 2 (via Zoom) |

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......... ii

**INTRODUCTION** .......... 1

**BACKGROUND** .......... 1

**ARGUMENT** .......... 4

**I. MoneyLion Has Not Established That Plaintiff Entered Into an Agreement to Arbitrate.** .......... 4

**II. MoneyLion Does Not Establish That Plaintiff Assented to the Arbitration Agreement.** .......... 6

**III. California Law, Not Utah Law, Governs the Enforceability of the Purported Arbitration Agreement.** .......... 7

**CONCLUSION** .......... 8

**L.R. 11-6.2 CERTIFICATE OF COMPLIANCE** .......... 8

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*America Online, Inc. v. Superior Ct.*,
90 Cal. App. 4th 1 (2001)....................8

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022).................... 6-7

*Burnett v. Ala Moana Pawn Shop*,
3 F.3d 1261 (9th Cir. 1993)....................2

*Holl v. U.S. Dist. Ct.*,
925 F.3d 1076 (9th Cir. 2019)....................7

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014)....................4

*Orubo v. Activehours, Inc.*,
780 F. Supp. 3d 927 (N.D. Cal. 2025) ....................2

*Reich v. Purcell*,
67 Cal. 2d 551 (1967)....................7

*Ruiz v. Moss Bros. Auto Group, Inc.*,
232 Cal. App. 4th 836 (2014).................... 4-5, 7

*Shaw v. Regents of Univ. of Cal.*,
58 Cal. App. 4th 44 (1997)....................5

*Wash. Mut. Bank, FA v. Super. Ct.*,
24 Cal. 4th 906 (2001) ....................7

*Williams v. Chartwell Fin. Servs., Ltd.*,
204 F.3d 748 (7th Cir. 2000)....................2

**Statutes**

Cal. Civ. Code § 1633.9(a)....................5

Cal. Const. art. XV, § 1 ....................2

Cal. Fin. Code § 22326....................2

15 U.S.C. § 1601(a) .......... 1
15 U.S.C. § 1605(a) .......... 2
15 U.S.C. § 1638 .......... 1

**Regulations**

12 C.F.R. § 1026.17 .......... 1
12 C.F.R. § 1026.18 .......... 1
12 C.F.R. § 1026.22 .......... 1
12 C.F.R. § 1026.4(a) .......... 2

## INTRODUCTION

MoneyLion has imposed multiple different arbitration clauses over time. This response (for Plaintiff Valencia) addresses the arbitration agreement in place in 2021. The response on behalf of Plaintiffs Bisquera and Jones addresses the very different arbitration agreement in place starting in 2024.[1] Here, MoneyLion moves to compel Plaintiff Valencia to arbitrate based on an agreement that MoneyLion has not shown he accepted. The Motion should be denied because MoneyLion cannot establish the existence of an arbitration agreement between the parties.

MoneyLion relies on screen prints that do not establish when or how the purported agreement was accepted, contain no contemporaneous record or audit trail tying the purported acceptance to Plaintiff, and do not even identify Plaintiff as the person who supposedly agreed to the terms. MoneyLion's Exhibit E is not even a record of Plaintiff's actual assent, but an undated depiction of a screen with the relevant boxes already checked, providing no evidence that Plaintiff personally selected them or even saw the screen in the form MoneyLion now presents to the Court. Because MoneyLion cannot establish formation from the evidence it has chosen to submit, Plaintiff should not be compelled to arbitrate based on a reconstruction of an electronic transaction that is not tied to Plaintiff.

## BACKGROUND

Congress enacted the Truth in Lending Act (TILA) to ensure "a meaningful disclosure of credit terms" so that consumers can avoid "the uninformed use of credit." 15 U.S.C. § 1601(a). TILA requires creditors to disclose the "finance charge" and the Annual Percentage Rate for every extension of consumer credit. *Id.* § 1638; 12 C.F.R. §§ 1026.17, 1026.18, 1026.22. The "finance charge" is defined broadly as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended,

---

[1] MoneyLion recently changed its terms *again* after this lawsuit was filed. However, the new 2026 terms expressly carve out this suit, since it was filed before the arbitration agreement changed. MoneyLion is not seeking to apply those 2026 terms to this case.

and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a); 12 C.F.R. § 1026.4(a). A charge does not need to be mandatory to qualify; courts look to "the economic substance of the transaction," not the label a lender attaches to it. Compl. ¶ 90 (quoting *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 753 (7th Cir. 2000)); *id.* (citing *Burnett v. Ala Moana Pawn Shop*, 3 F.3d 1261, 1262 (9th Cir. 1993)). All that is required is "a connection between the imposition of the charge and the extension of credit." Compl. ¶ 97 (quoting *Orubo v. Activehours, Inc.*, 780 F. Supp. 3d 927, 937 (N.D. Cal. 2025)). California law reinforces this same principle: usury limits under Article XV, Section 1 of the California Constitution and the California Financing Law apply to "interest" regardless of how a lender labels the charge, and lenders may not evade those limits "by any device, subterfuge, or pretense." Compl. ¶¶ 130, 134 (quoting Cal. Fin. Code § 22326). The point of these laws is that consumers are entitled to know the true, all-in cost of borrowing money before they agree to a loan—not a cost stripped of charges the lender has relabeled as something else.

MoneyLion did not comply. It advertises its Instacash product as "0% APR cash advances," Compl. ¶ 39, and as having "no interest," *id.* ¶ 143, while charging nearly every borrower a "turbo fee" that scales with the size of the loan, *id.* ¶¶ 47, 54, and soliciting a "tip" through a repayment interface designed to guilt consumers into paying it, *id.* ¶¶ 56, 58-64. Both charges are paid only by the borrower and only because the borrower is obtaining credit—the turbo fee is added by default and financed as part of the loan, and the tip is for the loan itself, not for any separate good or service. *Id.* ¶¶ 93-101. Neither is disclosed as a finance charge or reflected in the advertised APR, even though a $100 advance carrying an $8.99 turbo charge and a $10 tip repaid in fourteen days carries an actual APR of 495%. *Id.* ¶¶ 67-69.

MoneyLion's Credit Builder Loans work the same way. Borrowers must pay a recurring "monthly membership fee" to obtain the loan at all, *id.* ¶¶ 80, 117, a fee MoneyLion attempts to justify by bundling in "benefits" that are, in fact, available for

free to every other MoneyLion customer, *id.* ¶¶ 111-116. Once that fee is properly counted, the disclosed 23.91% APR on Plaintiff Bisquera's loan becomes an actual APR of 69%. *Id.* ¶¶ 78, 84. MoneyLion also failed to disclose, as TILA requires, that the APR does not account for the "credit reserve account" it withholds from borrowers until the loan is paid in full. *Id.* ¶¶ 123-126.

This is exactly the sort of technical workaround that TILA and California's usury and consumer protection laws are intended to prevent, and Plaintiffs are exactly the type of financially vulnerable borrowers those laws were enacted to protect. Plaintiffs took out MoneyLion loans believing, based on MoneyLion's own representations, that they were borrowing at 0% APR or at the modest rates disclosed in their loan documents. *Id.* ¶¶ 151-155. They paid substantially more than they were told they would, and were denied the ability to accurately compare MoneyLion's credit products against other lenders. *Id.* ¶¶ 147-149.

Plaintiff is a California resident who obtained financial products from MoneyLion through MoneyLion's mobile applications, including Instacash advances and Credit Builder Loans. *See* Dkt._14-1 at 9-10. To create an account with MoneyLion, a user must click "Create account." Dkt._14-5. The account-creation screen requires that a user click "Create account" after setting a password for the account, and checking two boxes. *Id.* One box states "I agree to the Electronic Transaction and Consent," while the other states "I agree to the following agreements: Arbitration & Waiver Agreements; Privacy Notice; Terms and Conditions; Membership Agreement." *Id.* The statements contain hyperlinks to the referenced documents. The "Create account" button will become highlighted and accessible only after setting a password and checking the boxes. *Id.*

The arbitration provision appears in a separate document titled the "Arbitration & Waiver Agreements" (the "Agreement"). MoneyLion contends that Plaintiff accepted the Agreement when Plaintiff signed up for an account or obtained a loan through the MoneyLion application. Dkt._14-1 at 9; Lobo Decl. ¶ 15. The Agreement contains

provisions governing arbitration, the right to reject arbitration, arbitration election, fees and costs, and the law and forum applicable to disputes concerning the arbitration provision. *See generally* Dkt._14-4.

## ARGUMENT

### I. MoneyLion Has Not Established That Plaintiff Entered Into an Agreement to Arbitrate.

MoneyLion has not sufficiently established that Plaintiff entered into an arbitration agreement. "General principles of contract law determine whether the parties have entered a binding agreement to arbitrate," and the party seeking arbitration bears the burden of proving the existence of an arbitration agreement. *Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal. App. 4th 836, 840-42 (2014) ("[t]he petitioner bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence."); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). MoneyLion has not met that burden here.

The evidence MoneyLion offers is insufficient to establish that Plaintiff entered into the arbitration agreement MoneyLion now seeks to enforce. The exhibits are not contemporaneous records of Plaintiff's purported assent. For example, Exhibit C, representing consent to the Agreement upon signing up for an account, has no user name, account identifier, name, or even date. Dkt._14-5. It does not even show that the boxes are ticked. The exhibits contain no audit trail or transaction history with Plaintiff, and provide no other underlying electronic record, system data, or other evidence showing when, how, or by whom the purported agreement was accepted. *See* Dkts._14-5, 14-6, 14-7, 14-8. Nor does MoneyLion provide any electronic signature history, clickstream data, or comparable system evidence tying the purported acceptance to Plaintiff. *Id.*

Exhibit B lists Plaintiff Valencia's printed name and a date (February 19, 2021), but does not prove that he actually assented. MoneyLion's declaration says only that review of ordinary business records shows that he checked the boxes and the process generated a signed agreement, but does not actually supply any of those records.

Dkt._14-2 at 4-5. Ms. Lobo does not identify the account-specific record time, the time of either click, an identifier tying the events to the document, or what procedures MoneyLion uses to ensure attribution is accurate. In *Ruiz*, the defendant likewise relied on an electronically signed arbitration agreement and a declaration asserting that the plaintiff had electronically signed it. 232 Cal. App. 4th at 839-40. The court held that the defendant had failed to establish that the electronic signature was the act of the plaintiff. *Id.* at 842-46. As the court explained, an electronic signature is attributable to a person only if it was "the act of the person," and the proponent bears the burden of establishing that attribution. *Id.* at 843 (quoting Cal. Civ. Code § 1633.9(a)). The presence of a purported electronic signature alone, without evidence establishing how that signature came to be associated with the plaintiff, was insufficient. *Id.* at 844-46.

Here, MoneyLion's screen prints do not identify Plaintiff as the person who supposedly accepted the Agreement, do not establish when the purported acceptance occurred, and do not provide any underlying electronic record showing that Plaintiff performed the purported act of acceptance. *See* Dkt._14-5. MoneyLion cannot satisfy its burden simply by producing a document and asserting that Plaintiff agreed to it based on the say-so of an employee who did not join the company until years later. *See Ruiz*, 232 Cal. App. 4th at 843. Once the purported electronic assent is challenged, MoneyLion must provide evidence sufficient to establish that Plaintiff assented to the agreement it seeks to enforce. *See id.* at 845-46.

Exhibit D has similar problems. Dkt._14-6. It shows Plaintiff Valencia's signature on a membership agreement in June of 2021, but again does not explain what records support attribution. Besides that, the arbitration clause is *referenced*, but not included—or even hyperlinked—within the membership agreement, meaning even if he did sign this document, it would not have made have made the arbitration terms "known or easily available" to him, as incorporation by reference requires. *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997).

## II. MoneyLion Does Not Establish That Plaintiff Assented to the Arbitration Agreement.

Independently, MoneyLion's Exhibit E is insufficient to establish contract formation because it does not identify Plaintiff Valencia and does not accurately establish what he purportedly saw or selected. *See* Dkt._14-7. Though MoneyLion's representative represents under oath that, "True and correct screen prints of Valencia's signing process for the MoneyLion Credit Builder Plus Membership Agreement are attached as Exhibit E," Dkt._14-2, Lobo Decl. at 8, in fact, Exhibit E cannot be Plaintiff Valencia's "signing process" for two reasons. First, because it states that "you, John Smith, agree this constitutes your signature …" Dkt._14-7. Second, because it is dated for a "first payment" of "Apr 25, 2021," while MoneyLion represents that Plaintiff Valencia signed *after* that date, on "June 12, 2021." *Compare* Dkt._14-2 at 7 *with* Dkt._14-7.

Exhibit E also does not contain any contemporaneous information tying the depicted screen to Plaintiff's account, including a timestamp, transaction identifier, account identifier, or other system-generated information establishing that this was the screen Plaintiff encountered. The exhibit therefore does not establish that the screen shown is a record of Plaintiff's transaction rather than a generic or reconstructed representation of MoneyLion's interface.

Next, the checkboxes on the exhibit appear already checked. Dkt._14-7. Whether the checkboxes agreeing to the Agreement have already been selected is important because it determines if Plaintiff manifested assent to the particular agreement MoneyLion seeks to enforce. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). *Berman* explains that electronic contracting requires both reasonably conspicuous notice of the contractual terms and an "unambiguous manifestation of assent" to those terms. *Id.* at 856. The user's action must objectively indicate agreement to the contractual terms. *Id.* A screenshot depicting checked boxes does not establish that Plaintiff personally selected those boxes, nor does it establish

when or under what circumstances the selections were made. *See* Dkt._14-7. MoneyLion cannot establish assent merely by showing what its interface was capable of displaying, but must establish what was presented to Plaintiff and what Plaintiff did in response. As *Ruiz* illustrates, evidence that places a purported electronic signature or acceptance on a document is not enough where the evidence does not establish that the act was attributable to the plaintiff. 232 Cal. App. 4th at 843-46. Here, MoneyLion does not identify Plaintiff, does not establish that Plaintiff was the user viewing the screen, and does not establish that Plaintiff affirmatively selected the already-checked boxes. *See* Dkt._14-7. Without that evidence, MoneyLion has not established an unambiguous manifestation of assent. *See Berman*, 30 F.4th at 856. Exhibit E does not sufficiently establish the existence of an agreement to arbitrate between MoneyLion and Plaintiff.

## III. California Law, Not Utah Law, Governs the Enforceability of the Purported Arbitration Agreement.

MoneyLion cannot avoid California law by invoking the Agreement's Utah choice-of-law provision. Dkt._14-4 at 5. Before the Court can enforce that provision, it must determine whether an agreement containing the provision was ever formed. *See Holl v. U.S. Dist. Ct.*, 925 F.3d 1076, 1083 (9th Cir. 2019). California's choice-of-law rules do not permit a contractual choice of foreign law to displace California's fundamental consumer protections where California has a materially greater interest in the dispute. *See Wash. Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 916-17 (2001); *Reich v. Purcell*, 67 Cal. 2d 551, 555 (1967). Under California's interest analysis, courts consider the respective interests of the states and, in determining which state has the materially greater interest, look to such considerations as the parties' domiciles and the place where the relevant conduct and injury occurred. *Reich*, 67 Cal. 2d at 555.

Here, Plaintiff is a California resident, Plaintiff obtained MoneyLion's financial products while residing in California, and Plaintiff's claims arise from conduct directed toward Plaintiff in California. California therefore has a substantial and direct interest in determining the rights of its residents under California law. *See Wash. Mut. Bank,* 24

Cal. 4th at 916-17. MoneyLion identifies no comparable connection between Utah and Plaintiff's claims sufficient to justify displacing California law. California courts have refused to enforce foreign choice-of-law provisions where doing so would substantially diminish California residents' rights in circumstances in which California has a materially greater interest. *See id.* at 916-17; *America Online, Inc. v. Superior Ct.*, 90 Cal. App. 4th 1, 12-13 (2001). That principle applies here.

**CONCLUSION**

For the foregoing reasons, the Motion should be denied.

**L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned counsel, counsel of record for Plaintiffs, certifies that this brief contains 2,475 words, which complies with the word limit set forth in Local Rule 11-6.1.

Dated: October 2, 2026

Respectfully submitted,

By: *<u>/s/ Noah Heinz</u>*

Noah Heinz
Albert Pak
PAK HEINZ PLLC
20 F Street N.W., 7th Floor
Washington, D.C. 20001
Tel.: (202) 505-6354
Email: Noah.Heinz@pakheinz.com
Email: Albert.Pak@pakheinz.com
*Counsel for Plaintiffs*