TROUTMAN PEPPER LOCKE LLP
Elizabeth Holt Andrews (SBN 263206)
elizabeth.andrews@troutman.com
Three Embarcadero Center, Suite 800
San Francisco, California 94111-4057
Telephone: 415.477.5700
Facsimile: 415.477.5710

*Attorneys for Defendants*
MoneyLion Technologies Inc.,
MoneyLion of California LLC,
and ML Plus LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION—RIVERSIDE**

| | |
|---|---|
| Elena Bisquera, et al.,<br><br>Plaintiffs,<br>v.<br><br>MoneyLion Technologies Inc., et al.,<br><br>Defendants. | Case No. 5:26-cv-03296-SSS-E<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AS TO PLAINTIFFS ELENA BISQUERA AND JASON JONES**<br><br>Date: October 23, 2026<br>Time: 2:00 p.m.<br>Courtroom: 2 (via Zoom)<br>Judge: Hon. Sunshine S. Sykes |

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1
II. ARGUMENT .......... 1
A. The Parties Formed An Arbitration Agreement .......... 1
1. MoneyLion provided reasonably conspicuous notice .......... 2
2. Bisquera and Jones unambiguously manifested assent .......... 5
3. Plaintiffs rely on materially distinguishable cases .......... 6
B. The Arbitration Agreement Is Not Unconscionable .......... 8
1. New York law governs whether the agreement is unconscionable .......... 8
a. New York has the substantial relationship .......... 8
b. Applying New York law does not offend California policy .......... 9
2. Plaintiffs cannot meet their unconscionability burden .......... 11
a. The Agreement is not procedurally unconscionable .......... 12
(1) MoneyLion prominently disclosed the arbitration terms .......... 12
(2) The penalty-free opt-out eliminates oppression .......... 13
(3) The “Skip for Now” option did not render Jones’s Agreement procedurally unconscionable .......... 15
b. The Agreement is not substantively unconscionable .......... 15
(1) The mass-filing terms do not apply, but are fair in any event .......... 16
(2) The appeal threshold is bilateral and benefits consumers .......... 17
(3) The IDR procedure is mutual and expressly justified .......... 18
(4) The fee-shifting clause is bilateral .......... 19



TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

(5) The confidentiality provision is mutual and limited ........ 20

(6) Section 1670.15 does not apply to Plaintiffs' claims ........ 20

(7) The choice-of-law clause does not invalidate the Agreement ........ 21

C. The Court Can Sever Any Unenforceable Provision ........ 21

III. CONCLUSION ........ 22

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ayala-Ventura v. Superior Ct.*,
119 Cal. App. 5th 241 (2026) .......... 16

*Beltran v. Nationstar Mortgage LLC*,
No. 25-cv-4412, 2026 WL 637337 (N.D. Cal. Mar. 6, 2026) .......... 4

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015) .......... 11

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... *passim*

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) .......... 14

*Cal. Crane Sch., Inc. v. Google LLC*,
No. 24-4604, 2025 WL 2541913 (9th Cir. Sept. 4, 2025) .......... 13

*Cluck v. GEO Secure Servs., LLC*,
122 Cal. App. 5th 249 (2026) .......... 14

*Dotson v. Amgen, Inc.*,
181 Cal. App. 4th 975 (2010) .......... 12

*Feld v. Postmates, Inc.*,
442 F. Supp. 3d 825 (S.D.N.Y. 2020) .......... 12

*Fittante v. Palm Springs Motors, Inc.*,
105 Cal. App. 4th 708 (2003) .......... 12

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) .......... 2, 4

*Gillman v. Chase Manhattan Bank, N.A.*,
73 N.Y.2d 1 (1988) .......... 9, 11, 15

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) .......... *passim*

*Harrington v. Atl. Sounding Co.*,
602 F.3d 113 (2d Cir. 2010) .......... 10

*Harris v. TAP Worldwide, LLC*,
248 Cal. App. 4th 373 (2016) .......... 12

*Hodges v. Comcast Cable Commc'ns, LLC*,
21 F.4th 535 (9th Cir. 2021) .......... 16, 20

*Hodsdon v. DirecTV, LLC*,
No. 12-cv-2827, 2012 WL 5464615 (N.D. Cal. Nov. 8, 2012) .......... 14

*In re Holl*,
925 F.3d 1076 (9th Cir. 2019) .......... 4, 7

*Jialu Wu v. iTalk Glob. Commc'ns, Inc.*,
No. 2:20-cv-7150, 2020 WL 8461696 (C.D. Cal. Oct. 21, 2020) .......... 2

*Johnson v. Walmart Inc.*,
57 F.4th 677 (9th Cir. 2023) .......... 1

*Kai Peng v. Uber Techs., Inc.*,
237 F. Supp. 3d 36 (E.D.N.Y. 2017) .......... 13

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 1, 2, 4, 11

*Kilgore v. KeyBank, Nat'l Ass'n*,
718 F.3d 1052 (9th Cir. 2013) .......... 13

*Klos v. Lotnicze*,
133 F.3d 164 (2d Cir. 1997) .......... 14

*Landeros v. Cintas Corp. No. 3*,
No. 2:20-cv-9931, 2021 WL 4147005 (C.D. Cal. June 9, 2021) .......... 11

*Lim v. TForce Logistics, LLC*,
8 F.4th 992 (9th Cir. 2021) .......... 19

*Little v. Auto Stiegler, Inc.*,
29 Cal. 4th 1064 (2003) .......... 17

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) .......... 13

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

*Morris v. Redwood Empire Bancorp*,
128 Cal. App. 4th 1305 (2005) ........ 14

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ........ 4, 5, 6

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ........ 2, 3, 6

*Pilon v. Discovery Commc'ns, LLC*,
769 F. Supp. 3d 273 (S.D.N.Y. 2025) ........ 2, 14

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
55 Cal. 4th 223 (2012) ........ 9, 11, 15, 17

*Pokorny v. Quixtar, Inc.*,
601 F.3d 987 (9th Cir. 2010) ........ 2

*Ramirez v. Charter Commc'ns, Inc.*,
16 Cal. 5th 478 (2024) ........ 19

*Rios v. HRB Digit. LLC*,
807 F. Supp. 3d 975 (N.D. Cal. 2025) ........ 14

*Saeedy v. Microsoft Corp.*,
757 F. Supp. 3d 1172 (W.D. Wash. 2024) ........ 5, 6

*Sanchez v. Valencia Holding Co., LLC*,
61 Cal. 4th 899 (2015) ........ 11

*Singh v. Adobe Inc.*,
797 F. Supp. 3d 1038 (N.D. Cal. 2025) ........ 5, 6

*Sonic-Calabasas A, Inc. v. Moreno*,
57 Cal. 4th 1109 (2013) ........ 15

*Suqin Zhu v. Hakkasan NYC LLC*,
291 F. Supp. 3d 378 (S.D.N.Y. 2017) ........ 15

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016) ........ 8

*Tsadilas v. Providian Nat'l Bank*,
13 A.D.3d 190 (1st Dep't 2004) ........ 13, 16, 19

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

*Wainwright v. Melaleuca, Inc.*, 844 F. App'x 958 (9th Cir. 2021) .......... 8

*Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466 (2006) .......... 14

*Wu v. Uber Techs., Inc.*, 43 N.Y.3d 288 (2024) .......... 2

*Wu v. Uber Techs., Inc.*, 78 Misc. 3d 551 (Sup. Ct. Bronx Cnty. 2022), *aff'd*, 219 A.D.3d 1208 (1st Dep't 2023), *aff'd*, 43 N.Y.3d 288 (2024) .......... 11

**Statutes**

Cal. Civ. Code § 1751 .......... 9

Cal. Civ. Code § 1799.208 .......... 9, 10

**Other Authorities**

Restatement (Second) of Conflict of Laws § 187 (A.L.I. 1971) .......... 8, 9

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

## I. INTRODUCTION

MoneyLion Technologies Inc., ML Plus LLC, and MoneyLion of California LLC (collectively, "MoneyLion") move to compel individual arbitration of Elena Bisquera's and Jason Jones's (collectively, "Plaintiffs") claims and to dismiss their purported class claims under a class action waiver (the "Motion").

Plaintiffs oppose on two grounds: formation and enforceability. Neither has merit. Plaintiffs do not deny they created accounts, clicked "Agree" or "Create account," electronically signed loan agreements incorporating the arbitration agreement, or used the products they now complain of, and they offer no contrary evidence. Instead, they ask the Court to ignore each Plaintiff's repeated manifestations of assent, plus a 30-day opt-out option that neither Plaintiff used. Their choice-of-law arguments change nothing, because the Agreement is enforceable under New York and California law alike. And their unconscionability attack targets terms that bind both parties and hypothetical mass-arbitration mechanisms that have never been triggered and are expressly severable. The Motion should be granted.

## II. ARGUMENT

### A. The Parties Formed An Arbitration Agreement

"If the court finds a valid arbitration agreement exists, [it] must order the parties to proceed to arbitration in accordance with the terms of the agreement." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1013 (9th Cir. 2024) (citation and quotation marks omitted). The party seeking to compel arbitration need only "prov[e] the existence of an agreement to arbitrate by a preponderance of the evidence." *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023).

To determine whether a valid arbitration agreement exists, "federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). While MoneyLion asserts that New York contract principles apply, Plaintiffs contend that California law governs the formation

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

issue. But the Court "need not decide which State's law governs[1] 'because both California and New York law dictate the same outcome.'" *Id.* Under both California and New York law, a digital arbitration agreement is formed when (1) the "website provides reasonably conspicuous notice of the terms to which the consumer will be bound;" and (2) "the consumer takes some action . . . that unambiguously manifests his or her assent to those terms." *Id.* at 856; *see also Wu v. Uber Techs., Inc.*, 43 N.Y.3d 288, 302–04 (2024). Both elements are satisfied here.

**1. MoneyLion provided reasonably conspicuous notice**

Conspicuousness turns on "the visual design of the webpages" and "the full context of the transaction." *Godun v. JustAnswer LLC*, 135 F.4th 699, 709–12 (9th Cir. 2025). In assessing the notice's visual design, courts review whether it was "displayed in a font size and format such that the court can fairly assume that a reasonably prudent internet user would have seen it." *Berman*, 30 F.4th at 856. There are no "per se rules"; courts weigh text size, proximity to the action button, color contrast, bolding or underlining, whether a hyperlink is apparent, and screen clutter in making the determination. *Godun*, 135 F.4th at 710; *see Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024); *Keebaugh*, 100 F.4th at 1020–21; *Ghazizadeh*, 737 F. Supp. 3d at 928–29. "[E]ven minor differences in the design elements" matter in making the notice conspicuous, and "[a] hefty dose of common sense goes a long way." *Godun*, 135 F.4th at 710.

---

[1] MoneyLion agrees, for purposes of this motion only, that the Court should apply California's governmental-interest analysis in identifying the governing state law without reference to the choice-of-law provision. *See Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 287–88 (S.D.N.Y. 2025); *Jialu Wu v. iTalk Glob. Commc'ns, Inc.*, No. 2:20-cv-7150, 2020 WL 8461696, at *2 n.1 (C.D. Cal. Oct. 21, 2020); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010). Given the lack of material difference in the relevant law of each jurisdiction, MoneyLion cites California precedent in this reply.

MoneyLion's mobile application and website provided conspicuous notice to Bisquera and Jones that they were agreeing to arbitrate. Any argument to the contrary is misplaced. Specifically, Bisquera had to proceed through the account creation screen on her mobile application before creating her MoneyLion account. *See* ECF 13-5. On that screen, directly below the "Create account" button, the text clearly stated: "By creating an account, I accept the Arbitration & Waivers Agreements." MoneyLion placed that text squarely within the user's line of sight at the moment of account creation. The text is of similar size compared with the action button, in a dark color that contrasts with the page's white background, which is simple and uncluttered. And the hyperlink, with its bolded, underlined text that precisely matches the formatting of other hyperlinks on the page, is readily apparent. Although Bisquera argues the hyperlink did not have a bright color, conspicuousness does not depend on any single design element. *See Godun*, 135 F.4th at 710; *Running Warehouse*, 93 F.4th at 477 (links need not be "blue, underlined, or capitalized"). And MoneyLion's notice was materially different from *Berman*'s, which used gray "font so small that it [wa]s barely legible to the naked eye," was dwarfed by other elements, sat apart from the action button, and buried its hyperlinks. 30 F.4th at 856–57.

Jones received equally conspicuous notice. The updated agreement screen he proceeded through when he accessed his MoneyLion mobile application on June 7, 2024, included MoneyLion's "NEW TERMS AND POLICIES" in large, dark, bold, and capitalized letters at the top of the screen. *See* ECF 13-7. Immediately below, MoneyLion advised Jones that it was "updating the following terms and policies," thereafter listing "Agreement for Resolving Disputes" in clearly delineated, legible font, with a readily apparent hyperlink and an explanation that this agreement pertained to "procedures for resolving disputes relating to your use of the MoneyLion platform." *Id.*

MoneyLion presented both Bisquera and Jones another opportunity to review the arbitration agreement when they obtained their Credit Builder Plus loans, for



TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

which they each signed a Pledge and Security Agreement containing a conspicuous arbitration clause. *See* ECF 13-10, 13-11. Plaintiffs contend that "[n]o conspicuous notice was ever provided" therein. *See* ECF 17 at 5–6. However, the Pledge and Security Agreements Bisquera and Jones signed both contain a bold, all-caps statement in the middle of the first substantive page which provides explicit notice of the arbitration provision and their right to opt out. *See* ECF 13-10, 13-11. The notice specifically cautions that "[b]efore signing this Agreement, you should carefully review the Agreements for Resolving Disputes," putting the reasonably prudent user on notice to review the agreement(s) incorporated therein by reference. *Id.*; *see also In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019) (finding plaintiff "affirmatively assented" to service terms where he "checked a box acknowledging as much" and the terms "validly incorporate[d] the . . . arbitration clause.").

The context of the transactions also put Bisquera and Jones on notice. "[C]ourts should expect that a reasonable internet user is more vigilant in looking for contractual terms when the context of the transaction reasonably implies a contractual relationship." *Godun*, 135 F.4th at 709. Thus, notice is typically conspicuous in transactions involving a full registration process, sharing of financial information, and the download of a mobile application. *Id.* at 710; *see Keebaugh*, 100 F.4th at 1019.

Here, Bisquera and Jones were each required to complete a full registration process through MoneyLion's mobile application to access its financial products. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023) (full registration process reflects a continuing relationship); *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 925–26 (N.D. Cal. 2024); *Keebaugh*, 100 F.4th at 1020 (mobile app connotes continual access). Indeed, the complaint challenges fees MoneyLion charged for services they used. Moreover, Plaintiffs obtained Credit Builder Plus loans from MoneyLion, necessarily entering into a contractual relationship with MoneyLion and entrusting MoneyLion with their personal financial information. *See Beltran v. Nationstar Mortgage LLC*, No. 25-cv-4412, 2026 WL 637337, at *4–5 (N.D. Cal.



TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

Mar. 6, 2026) (borrower making ongoing loan payments "should have anticipated terms and conditions to govern his ongoing relationship"). Given the context of these transactions, MoneyLion's arbitration requirements were reasonably conspicuous.

**2. Bisquera and Jones unambiguously manifested assent**

"The second part of the [formation] test—whether the user t[ook] some action that unambiguously manifest[ed] assent—is relatively straightforward." *Oberstein*, 60 F.4th at 515. An internet user's click of a button unambiguously manifests assent where the user "is explicitly advised that the act of clicking will constitute assent to the terms and conditions of the agreement." *Berman*, 30 F.4th at 857. "Explicit advisement generally looks like an explanatory clause, usually at the beginning of an advisal—for example: 'By clicking the Continue >> button, you agree to the Terms & Conditions.'" *Godun*, 135 F.4th at 711 (quoting *Berman*, 30 F.4th at 858) (emphasis and underlining omitted).

Plaintiffs do not dispute that MoneyLion's screens meet this standard on their face, nor could they: MoneyLion paired each action button with an advisal that clicking constitutes assent, accompanied by a hyperlink to the terms, tracking the Ninth Circuit's exemplar. *See Berman*, 30 F.4th at 858.

Instead, Plaintiffs argue that MoneyLion must produce audit trails, signature histories, or clickstream data. ECF 17 at 14–15. Not so. Courts routinely accept exemplar screenshots, signed agreements, and detailed declarations based on personal knowledge of company processes and records. *See Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1192–94, 1199 (W.D. Wash. 2024) (rejecting argument that defendant must produce contemporaneous evidence); *Singh v. Adobe Inc.*, 797 F. Supp. 3d 1038, 1045–46 (N.D. Cal. 2025). MoneyLion's evidence meets that standard, and Plaintiffs' speculation about authenticity[2] is not contrary evidence.

---

[2] Tellingly, Plaintiffs do not dispute that MoneyLion's exemplars accurately depict what they saw while using MoneyLion's mobile application, nor do Plaintiffs contend that they did not click the relevant action buttons on those pages. Minor variations in



TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

**3. Plaintiffs rely on materially distinguishable cases**

None of the cases regarding formation on which Plaintiffs rely compels a different result. *Sellers v. JustAnswer LLC* and *Godun* involved notices that blended into their surroundings. The *Sellers* court faulted a small-print disclosure whose hyperlink was underlined but offered no color contrast, 73 Cal. App. 5th 444, 479 (2021), and the notice in *Godun* was presented in a lighter color than the surrounding text, gray on gray, 135 F.4th at 711–12. Here, by contrast, MoneyLion's hyperlinked agreement titles appear in bold, underlined, dark text, that was darker than the surrounding text and set against a plain white background. *See* ECF 13-5. Under *Godun*'s own reasoning, "even minor differences in the design elements" can make the difference, and those differences cut in MoneyLion's favor. 135 F.4th at 710.

Plaintiffs' reliance on *Oberstein* fares no better. They contend that MoneyLion's screens lack *Oberstein*'s bright blue hyperlinks and a button "directly beneath language explicitly tying the click to agreement." ECF 17 at 4. First, *Oberstein* did not make either feature a prerequisite to formation, and the Ninth Circuit has since confirmed that hyperlinks need not be blue to be conspicuous. *See Running Warehouse*, 93 F.4th at 477. Second, MoneyLion's account creation screen that Bisquera necessarily viewed *does* tie the click to the agreement: the advisal directly beneath the "Create account" button states "By creating an account, I accept" the listed agreements, which mirrors the button's own label and tracks the "By clicking . . . you agree" formulation the Ninth Circuit has endorsed. *See Berman*, 30 F.4th at 858. Plaintiffs even agree that MoneyLion's new terms screen that Jones viewed on June 7, 2024 "states that clicking 'Agree' constitutes acceptance of the

---

how the declaration describes a button label or agreement title create no factual dispute where Plaintiffs deny neither seeing the screens nor clicking the buttons, and a declarant may testify from business records and familiarity with company processes regardless of her start date. *See Saeedy*, 757 F. Supp. 3d at 1194; *Singh*, 797 F. Supp. 3d at 1045–46.

Agreement for Resolving Disputes." ECF 17 at 6. Nothing in *Oberstein* requires the arbitration provision itself be separately identified on the screen, and in any event the screen described the agreement as governing "procedures for resolving disputes relating to your use of the MoneyLion platform." ECF 13-7.

*Nguyen v. Barnes & Noble Inc.* is likewise inapposite. The case involved a pure "browsewrap" agreement, under which the user was not required to take any affirmative action to signal assent. 763 F.3d 1171, 1176–79 (9th Cir. 2014). Here, each Plaintiff took affirmative action expressly tied to the terms: clicking "Create account" or "Agree," and electronically signing a Pledge and Security Agreement. In fact, the *Holl* case Plaintiffs rely on for their choice-of-law argument undercuts their contention that the Pledge and Security Agreements could not bind them because they incorporate the Agreement for Resolving Disputes by reference rather than by hyperlink. ECF 17 at 6–7. In *Holl*, the Ninth Circuit held that a user's assent to service terms encompassed an arbitration clause in a separate document that those terms clearly and expressly incorporated. 925 F.3d at 1084. The Pledge and Security Agreements do the same, incorporating the Agreement for Resolving Disputes "as if fully set forth herein" beneath a bold, all-caps arbitration notice directing the borrower to review that agreement before signing. *See* ECF 13-10, 13-11.

Finally, *Ruiz v. Moss Bros. Auto Grp., Inc.* also does not help Plaintiffs. There, the employer offered only a summary assertion that the employee had electronically signed the agreement, and the employee submitted a declaration stating he did not recall signing it. 232 Cal. App. 4th 836, 844 (2014). Here, MoneyLion submitted a detailed declaration explaining its account creation, update, and loan-signing processes, together with exemplar screenshots and the executed agreements bearing Plaintiffs' electronic signatures. Plaintiffs could not have used MoneyLion's products or obtained their loans without viewing these screens, clicking "Create account" or "Agree," and signing their Pledge and Security Agreements. Plaintiffs, meanwhile, have submitted no declaration at all; neither denies creating an account, clicking

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

"Create account" or "Agree," or signing a Pledge and Security Agreement. Their arguments are entirely manufactured to avoid a binding arbitration agreement.

**B. The Arbitration Agreement Is Not Unconscionable**

Plaintiffs cannot carry their burden of proving the Agreement is procedurally and substantively unconscionable under either New York or California law.

**1. New York law governs whether the agreement is unconscionable**

When "determining the enforceability of arm's-length contractual choice-of-law provisions," California courts "apply the principles set forth in Restatement section 187, which reflect a strong policy favoring enforcement of such provisions." *Wainwright v. Melaleuca, Inc.*, 844 F. App'x 958, 960 (9th Cir. 2021) (citing *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 464–65 (1992)). Under Section 187, a choice-of-law provision is enforceable unless (1) "the chosen state has no substantial relationship to the parties or the transaction"; or (2) applying the chosen law "would be contrary to a fundamental policy of a state which has a materially greater interest" and whose law would otherwise apply. Restatement (Second) of Conflict of Laws § 187(2) (A.L.I. 1971).

**a. New York has the substantial relationship**

The Agreement provides that it "shall be governed by the laws of the State of New York, without regard to conflict of law principles." ECF 13-4 § 8. The parties likewise selected the state and federal courts of New York County for non-arbitrable disputes. *Id.* §§ 6, 8. Comment f to Restatement Section 187 explains that a substantial relationship exists where, among other things, one of the parties has its principal place of business in the chosen state. Restatement (Second) of Conflict of Laws § 187 cmt. f; *see also Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1029 (9th Cir. 2016) (upholding forum selection clause where a sufficient nexus to the contract was established through the defendant's principal place of business).

Plaintiffs' own pleading establishes that relationship. The Complaint alleges that MoneyLion Technologies Inc. has "its principal place of business in New York,





TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

New York," and that both MoneyLion of California LLC and ML Plus LLC have a member who "is a citizen of New York," making every Defendant a New York citizen. ECF 1 ¶¶ 12, 26–29. Having invoked diversity jurisdiction on that premise, Plaintiffs cannot dispute New York's substantial relationship with the parties. ECF 17 at 9.

**b. Applying New York law does not offend California policy**

Absent the parties' choice, the applicable law would likely be California, where Plaintiffs reside and accessed MoneyLion's platform. *See* ECF 17 at 9; ECF 13-2 ¶ 27. But that does not end the inquiry, because the second exception applies only where the chosen state's law is "contrary to a fundamental policy" of California. Restatement (Second) of Conflict of Laws § 187(2)(b). Applying New York unconscionability law cannot offend California policy because California and New York express similar requirements. Indeed, under both California and New York law, the party resisting arbitration must establish the contract is both procedurally and substantively unconscionable when made before the court can deem it unenforceable. *See Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012); *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988) (unconscionability "requires a showing that the contract was both procedurally and substantively unconscionable when made").

Plaintiffs' statutory arguments do not change the analysis. They contend that three California rules override the choice-of-law clause: (1) California Civil Code section 1799.208, which they say renders the clause voidable at their election; (2) the CLRA's anti-waiver provision, Cal. Civ. Code § 1751, as construed in *America Online, Inc. v. Superior Court*; and (3) California's "fundamental" consumer-lending policy recognized in *Brack v. Omni Loan Co.* ECF 17 at 8–9. Plaintiffs also seek

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

attorneys' fees under section 1799.208(c) for "enforcing" that statute. *Id.* at 22. None is relevant here.

First, section 1799.208 creates certain restrictions pertaining to agreements requiring arbitration of a California controversy "under the substantive law of a state other than California." Cal. Civ. Code § 1799.208(a)(2). That is inapplicable here because the choice-of-law clause pertains to the enforceability of the Agreement. There is no present dispute over the substantive law that applies to Plaintiffs' claims in arbitration. Moreover, California and New York apply the same unconscionability standard. Voiding the choice-of-law clause would change nothing about the outcome of this motion. Section 1799.208 does not apply to Jones in any event because the statute reaches only contracts "entered into, modified, or extended on or after January 1, 2025." *Id.* § 1799.208(e). Plaintiffs try to bring Jones within the statute by asserting that his January 2025 Pledge and Security Agreement "extended" the 2024 Agreement, but by Plaintiffs' own account, the document merely referenced dispute-resolution terms to which Jones had "already agreed." ECF 17 at 6, 8. Referring back to an existing agreement neither enters into, modifies, nor extends it, and Plaintiffs cite no authority to the contrary.

Second, *America Online* and *Brack* are inapposite. Each addressed whether a foreign choice-of-law clause could strip consumers of California's substantive protections on the merits of their claims—not whether an agreement to arbitrate is enforceable. 90 Cal. App. 4th 1, 5 (2001); 164 Cal. App. 4th 1312, 1327 (2008). Plaintiffs' concern that New York law would eliminate their CLRA claim or displace California's usury and lending statutes is thus misdirected. Whether California law governs Plaintiffs' CLRA and usury claims is a merits question for the arbitrator, who "applies the same law and can award the same individualized remedies

that a court could award." Agmt. § 1. Compelling arbitration does not resolve that question against Plaintiffs; it simply sends it to the forum the parties chose.

Third, because Plaintiffs would obtain no relief by "enforcing" section 1799.208, there is no basis for their request for fees under subsection (c).

**2. Plaintiffs cannot meet their unconscionability burden**

Plaintiffs catalog provisions they dislike, but dislike is not the standard. Under New York law, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid," *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010), and must prove that the contract was *both* procedurally and substantively unconscionable, *Gillman*, 73 N.Y.2d at 10; *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 391 (E.D.N.Y. 2015). California law is the same. "[T]he party resisting arbitration bears the burden of proving unconscionability," *Pinnacle*, 55 Cal. 4th at 247, and must show both elements, which Plaintiffs concede operate on a sliding scale, ECF 17 at 10. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015); *see also Keebaugh*, 100 F.4th at 1022.

Plaintiffs cannot meet that burden because they read the Agreement selectively. The Agreement is bilateral in nearly every term Plaintiffs attack. ECF 13-4, 13-6. The jury waiver is "for the mutual benefit of all parties." Agmt. § 1. The Informal Dispute Resolution Procedure "must be satisfied before either you or MoneyLion can commence an arbitration." *Id.* § 2. The fee provision applies "if either you or MoneyLion" files prematurely. *Id.* § 4(d). And "any party" may appeal a large award. *Id.* § 7. "Only a 'modicum of bilaterality' is required to prevent a finding of substantive unconscionability," *Landeros v. Cintas Corp. No. 3*, No. 2:20-cv-9931, 2021 WL 4147005, at *4 (C.D. Cal. June 9, 2021), and the Agreement supplies far more.

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

**a. The Agreement is not procedurally unconscionable**

Plaintiffs argue the Agreement is procedurally unconscionable because it is a contract of adhesion that "buried material terms." ECF 17 at 10–11. The Agreement itself refutes both points.

*(1) MoneyLion prominently disclosed the arbitration terms*

New York courts consider agreement terms that are "logically arranged under clear and conspicuous headings and subheadings," with a "conspicuous notice of the existence of the arbitration agreement" set off "in bold[-]face, all-caps font," to be "not hidden or disguised." *Wu v. Uber Techs., Inc.*, 78 Misc. 3d 551, 589 (Sup. Ct. Bronx Cnty. 2022), *aff'd*, 219 A.D.3d 1208 (1st Dep't 2023), *aff'd*, 43 N.Y.3d 288 (2024). Applying California law would yield the same result. California courts consider surprise to "involve[] the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form," and turn on whether the agreement lacks "headings or other obvious indications" that rights are being waived. *Fittante v. Palm Springs Motors, Inc.*, 105 Cal. App. 4th 708, 722 (2003). An agreement "not overly long and . . . written in clear, unambiguous language" is not procedurally unconscionable. *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 981 (2010).

MoneyLion disclosed the arbitration terms in precisely that manner. The Agreement opens with a bold, all-capitals warning: "**PLEASE READ THIS AGREEMENT CAREFULLY. IT REQUIRES YOU AND MONEYLION TO RESOLVE DISPUTES THROUGH ARBITRATION OR SMALL CLAIMS COURT ON AN INDIVIDUAL BASIS RATHER THAN JURY TRIALS, CLASS ACTIONS, CLASS ARBITRATION, OR OTHER REPRESENTATIVE ACTIONS.**" Agmt. at 1 (emphasis in original). Section 1 then provides a plain-language summary explaining what arbitration is and the steps for resolving a dispute. *Id.* § 1.

Plaintiffs' central claim of supposed surprise—that the mass-filing procedures were concealed behind a representation that the update was "more specific"—is





TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

contradicted by the Agreement's first page of substance. ECF 17 at 11. The summary expressly advises that "[t]here are special rules for mass or coordinated arbitrations, where the same lawyers or a group of coordinated lawyers seek to file 25 or more similar arbitrations," that "the matters will proceed in stages, so it might take longer to arbitrate your dispute than it would otherwise," and directs the reader to Section 4(h). Agmt. § 1. A term disclosed in the summary is not a term buried in fine print. Likewise, the New York choice-of-law clause that Plaintiffs say was "buried[] deep inside the Agreement," appears under its own numbered heading: "8. Governing Law." *Id.* § 8. That Plaintiffs may not have read these terms is "legally irrelevant." *Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 383 (2016); *see Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 831 (S.D.N.Y. 2020) (whether user "actually clicked on the hyperlinked terms to read the TOS . . . is immaterial; what matters is that notice of these terms was reasonably conspicuous.").

*(2) The penalty-free opt-out eliminates oppression*

Plaintiffs argue the opt-out cannot cure procedural unconscionability. ECF 17 at 11–12. But under New York law, a "30–day opt-out provision . . . substantially negates any challenge of procedural unconscionability," and "[c]ourts applying New York law have considered an opt-out provision as an important, if not dispositive, factor in rejecting challenges of procedural unconscionability." *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 55–56 (E.D.N.Y. 2017); *see Tsadilas v. Providian Nat'l Bank*, 13 A.D.3d 190, 191 (1st Dep't 2004) (arbitration provision "not unconscionable because plaintiff had the opportunity to opt out without any adverse consequences"). California law is the same: "an arbitration agreement is not adhesive if there is an opportunity to opt out of it." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016). The Ninth Circuit recently reaffirmed that where "there is an opportunity to opt out" of arbitration, "the agreement is not adhesive and thus not procedurally unconscionable." *Cal. Crane Sch., Inc. v. Google LLC*, No. 24-4604, 2025 WL 2541913, at *1 (9th Cir. Sept. 4, 2025). A 30-day window is "sufficient."

*Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013). Plaintiffs dismiss *Mohamed* as made "in passing," ECF 17 at 11–12, but it is controlling.

The opt-out here was meaningful. Plaintiffs had 30 days to reject arbitration with a short, signed notice; MoneyLion would reimburse certified-mail postage; a retained attorney could opt out for the consumer; and opting out would "not affect [the consumer's] access to or use of the MoneyLion Platform . . . or [the consumer's] ability to obtain credit from MoneyLion." Agmt. § 4(a). Nor are there "ongoing burdens" for "successive versions" (ECF 17 at 12): consumers may reject any future change by emailing arbitration@moneylion.com within 30 days. Agmt. § 4(i). Neither Plaintiff opted out. ECF 13-2 ¶ 21. An "arbitration provision does not gain unconscionability by lacking consumer-friendly provisions" such as a checkbox. *Hodsdon v. DirecTV, LLC*, No. 12-cv-2827, 2012 WL 5464615, at *7 (N.D. Cal. Nov. 8, 2012).

Even if the Court deems the Agreement adhesive, New York law holds that a form "offered on a take-it-or-leave it basis" is "insufficient to render the contract unconscionable, particularly when the party charging unconscionability had the ability" to take its business elsewhere. *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 296 (S.D.N.Y. 2025); *see also Klos v. Lotnicze*, 133 F.3d 164, 168–69 (2d Cir. 1997) (adhesion "may not be invoked to trump the clear language of the agreement unless there is a disturbing showing of unfairness, undue oppression, or unconscionability"). Plaintiffs do not contend MoneyLion was their only available source of consumer credit or cash advances. California law is no different: adhesion does not make a contract "per se oppressive," *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320 (2005), and "[t]here can be no oppression . . . when the customer has meaningful choices," *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 482 (2006). Post-*Concepcion*, take-it-or-leave-it consumer terms present at most a "low" level of procedural unconscionability that "fail[s] to tip the scales." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1014–15 (9th Cir. 2023).

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

Plaintiffs' California authorities do not change the result. *Cluck* involved an employee who had to draft his own opt-out statement and mail or fax it to Florida, in an employment context of "acute economic pressure." *Cluck v. GEO Secure Servs., LLC*, 122 Cal. App. 5th 249, 256–57 (2026). *Rios* required consumers to repeat the opt-out for each new version of a "lengthy, 21-page, single-spaced contract" with the arbitration provision beginning on page 15. *Rios v. HRB Digit. LLC*, 807 F. Supp. 3d 975, 986 (N.D. Cal. 2025). Here, opting out carried no consequences, future changes can be rejected by email, and the eleven-page Agreement announces arbitration in bold capitals on its first page.

*(3) The "Skip for Now" option did not render Jones's Agreement procedurally unconscionable*

Plaintiffs contend that the June 2024 update that bound Jones to the Agreement was adhesive because MoneyLion treated "Skip for now" as consent. ECF 17 at 11. But by Plaintiffs' own account, the June 7, 2024 screen stated that clicking "Agree" constituted acceptance of the Agreement for Resolving Disputes (*id.* at 6), and MoneyLion's records reflect that Jones clicked "Agree." ECF 13-2 ¶ 18. The availability of a "Skip for now" option only added choice; it did not diminish it. And Jones independently re-affirmed the Agreement when he executed his January 9, 2025 Pledge and Security Agreement. *Id.* ¶ 25.

**b. The Agreement is not substantively unconscionable**

Under New York law, a term is substantively unconscionable only if it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Gillman*, 73 N.Y.2d at 10; *see Suqin Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378, 387–88 (S.D.N.Y. 2017). California's standard is equally demanding: the term must be "so one-sided as to 'shock the conscience.'" *Pinnacle*, 55 Cal. 4th at 246. "A contract term is not substantively unconscionable when it merely gives one side a greater benefit." *Id.* "[C]ourts may not decline to enforce an arbitration agreement

simply on the ground that it appears to be a bad bargain or that one party could have done better," because "[t]he unconscionability inquiry is not a license for courts to impose their renditions of an ideal arbitral scheme." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1148 (2013). Measured against either standard, each of Plaintiffs' seven challenges fails.

*(1) The mass-filing terms do not apply, but are fair in any event*

Plaintiffs' leading substantive argument is that Section 4(h)'s staged procedures will cause years of delay. ECF 17 at 12–15. That argument fails at the threshold because the protocol has not been triggered. Section 4(h) applies only "[i]f, at any time, 25 or more claimants . . . submit Notices of Dispute or seek to file demands for arbitration raising similar claims . . . by the same or coordinated counsel," and staging occurs only if MoneyLion then elects it. Agmt. § 4(h). Plaintiffs identify no such mass filing. New York courts refuse to invalidate arbitration agreements based on risks that are "too speculative," because doing so "would undermine the 'liberal federal policy favoring arbitration agreements.'" *Tsadilas*, 13 A.D.3d at 191 (quoting *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91 (2000)). The same is true under California law: the Ninth Circuit has cautioned courts not to "stretch to invalidate contracts based on hypothetical issues that are not actually presented in the parties' dispute." *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 541 (9th Cir. 2021); *see also Ayala-Ventura v. Superior Ct.*, 119 Cal. App. 5th 241, 257–58 (2026) (rejecting challenges that "appear[] speculative at best"). Plaintiffs' predictions of how a future mass arbitration might unfold are precisely such speculation.

On the merits, the protocol is not one-sided. Claims in each stage proceed concurrently before separate arbitrators, who are "encouraged to resolve the matters within 120 calendar days." Agmt. § 4(h). There is no bellwether effect, because no ruling binds or precludes other customers. *Id.* §§ 4(c), 7. Limitations periods are

Troutman Pepper Locke LLP
Three Embarcadero Center
Suite 800
San Francisco, CA 94111

tolled, MoneyLion pays for the global mediations, and counsel must confer between stages about increasing stage sizes. *Id.* § 4(h).

Plaintiffs' asymmetry argument fares no better. The post-Stage Three opt-out is a mutual term: "You and MoneyLion may separately or by agreement, opt out of arbitration and elect to have your Claim heard in court." Agmt. § 4(h). MoneyLion's 14-day window runs only after the claimant's 30-day window closes—a sequencing mechanism that allows MoneyLion to respond to claimant elections, not a unilateral advantage. *Id.* And if a court finds the procedures unenforceable as to any claim, "your Claim shall proceed in a court of competent jurisdiction." *Id.*

Finally, Plaintiffs misread Section 4(c) as denying mass claimants full remedies. ECF 17 at 14–15. The Agreement guarantees that the arbitrator "applies the same law and can award the same individualized remedies that a court could award." Agmt. § 1. The phrase "[e]xcept in the case of mass or coordinated arbitrations" in Section 4(c) addresses the individualized nature of relief in each proceeding, not a cap on statutory remedies.

*(2) The appeal threshold is bilateral and benefits consumers*

Plaintiffs argue that Section 7's appeal right "inordinately benefits MoneyLion." ECF 17 at 15. But Section 7 provides that "any party may appeal the award to a three-arbitrator panel," which "will reconsider anew any aspect of the initial award that is appealed." Agmt. § 7. The threshold expressly includes "Claims that may reasonably require injunctive relief costing more than $50,000," *id.*—relief that consumers, not MoneyLion, seek. Plaintiffs themselves insist that consumer awards will often exceed $50,000 (ECF 17 at 15); if so, consumers equally may seek *de novo* review of an inadequate award. A provision available to both sides does not become unconscionable because Plaintiffs speculate about who will use it more. *See Pinnacle*, 55 Cal. 4th at 246.

Even under California law, *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064 (2003), is distinguishable. The clause there permitted review only of "[a]wards exceeding





TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

$50,000," which the court found one-sided because a plaintiff whose substantial claim was wrongly rejected, and who "takes nothing," would have no review. *Id.* at 1071, 1073. Section 7 is triggered by "*Claims* involving more than $50,000," so a consumer may appeal even a zero-dollar award. Agmt. § 7. And because the panel reviews anew, an appeal exposes MoneyLion to a larger award, unlike the record-based review *Little* found "more favorable to the employer." 29 Cal. 4th at 1074.

*(3) The IDR procedure is mutual and expressly justified*

Plaintiffs portray Section 3 as a one-sided obstacle course. ECF 17 at 15–17. The Agreement says otherwise. It provides that "NEITHER YOU NOR MONEYLION CAN COMMENCE AN ARBITRATION OR SMALL CLAIMS ACTION UNLESS THE INFORMAL DISPUTE RESOLUTION PROCEDURE . . . HAS BEEN FULLY SATISFIED," Agmt. § 3; that MoneyLion must send its own Notice of Dispute signed by a MoneyLion representative, *id.*; and, in the Summary, that "[MoneyLion] will use the same process if [it has] a dispute with you," *id.* § 1.

Plaintiffs also misstate the procedure's requirements. They assert the Notice must be submitted by the claimant, "not his counsel." ECF 17 at 16. Yet the Agreement requires only that the Notice be "personally signed by you . . . or otherwise authenticated by you if the Notice of Dispute is filed electronically." Agmt. § 3. It contemplates that the consumer may authorize MoneyLion to share account information with Plaintiffs' "attorney," and requires that, if Plaintiffs "are represented by an attorney, then [their] attorney must also be present at the Informal Settlement Conference." *Id.* The Notice may be submitted electronically, the conference occurs only if the recipient requests one, and it is held by phone or videoconference. *Id.* §§ 2–3. Any limitations period is tolled throughout. *Id.* § 3.

The Agreement includes that justification on its face: it exists so "that you and MoneyLion have a meaningful chance to resolve disputes informally and efficiently." *Id.* And it rewards compliance: if a compliant claimant obtains an award greater than MoneyLion's last written settlement offer, MoneyLion will pay "the amount of the

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

award or $5,100, whichever is greater," in addition to any fees due under law. *Id.* § 4(e).

Plaintiffs' complaint about MoneyLion's reserved self-help remedies omits that the carve-out is reciprocal. It equally preserves "any individual action by you or MoneyLion to prevent the other party from using any self-help remedy, so long as such action does not involve a request for monetary relief." *Id.* § 2. The reserved remedies—account suspension, collateral liquidation, and credit reporting—are ordinary incidents of a lending relationship, not arbitrable disputes. *Id.*

*(4) The fee-shifting clause is bilateral*

Plaintiffs argue that Section 4(d)'s fee provision chills claimants. ECF 17 at 17–19. By its terms, however, it applies "if either you or MoneyLion commence an arbitration before fully satisfying the Informal Dispute Resolution Procedure." Agmt. § 4(d). It is triggered by a party's failure to complete a free, tolled, pre-filing step—not by losing on the merits or on the threshold question of arbitrability. When the procedure is followed, "the parties are responsible for their own arbitration-related fees and costs," MoneyLion "will pay your arbitration-related fees to the extent required by law or to make this Agreement enforceable," and the arbitrator may award "attorneys' fees (if available under applicable law)." *Id.* §§ 4(c)–(d). Under New York law, a cost-based challenge is "premature" where, as here, the plaintiff "has failed to make use of her contractual right to ask defendant to pay her arbitration fees." *Tsadilas*, 13 A.D.3d at 191. And Plaintiffs' one-way statutory fee rights under TILA and the CLRA are preserved, not displaced. *See* Agmt. § 4(e) (minimum award is "in addition to any attorneys' fees and expenses . . . you are due under the law").

The result is the same under California law, and *Lim* and *Ramirez* are distinguishable. In *Lim*, a prevailing-party clause exposed an employee to the employer's fees, including on the "threshold issue of arbitrability," and it operated alongside Texas venue and fee-splitting provisions. *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1002–05 (9th Cir. 2021). In *Ramirez*, an employee who resisted a motion





TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

to compel had to pay the employer's fees even if she succeeded in striking unlawful terms, which could "chill an employee's right to challenge the enforceability of an arbitration agreement." *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 507–09 (2024). Section 4(d) does neither: it does not turn on who prevails, and it imposes no fees for challenging enforceability, which only a court may decide. Agmt. § 4(c). At a minimum, it is severable. *See* Part II.C, *infra*.

*(5) The confidentiality provision is mutual and limited*

Section 11 binds both parties equally, permits disclosure "to the extent needed to pursue the arbitration or to appeal or confirm any award," and authorizes protective orders for "confidential information of either party." Agmt. § 11. It does not prevent consumers from going to regulators: "[n]othing in this Agreement shall preclude you from bringing issues to the attention of federal, state, or local agencies." *Id.* § 4(b). And the Agreement's provision that "[t]he arbitrator may consider rulings in other arbitrations involving different customers" undercuts Plaintiffs' claimed information asymmetry in mass arbitrations. *Id.* § 4(c).

California law would not require a different result. In *Haydon v. Elegance at Dublin*, cited by Plaintiffs, the court found unconscionable a confidentiality provision which barred the parties from disclosing "the existence, content, or results of the arbitration." 97 Cal. App. 5th 1280, 1290 (2023). The confidentiality provision here is nowhere near as restrictive. In any event, if the Court has concerns about Section 11, the remedy is to sever it. *See* Part II.C, *infra*.

*(6) Section 1670.15 does not apply to Plaintiffs' claims*

Plaintiffs label the Agreement an "infinite" arbitration clause in violation of Civil Code section 1670.15. ECF 17 at 20–21. But the definition of "Claim" is tethered to the parties' transaction: it reaches disputes that relate "to your use of or access to the MoneyLion Platform or to any product or service offered by or through the MoneyLion Platform," and expressly excludes claims against third parties. Agmt. § 2. Every claim Plaintiffs assert arises from their use of Instacash and Credit Builder



TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

products, which they accessed through MoneyLion's website and mobile application. ECF 13-2 ¶ 27. Plaintiffs therefore cannot show the definition operates unfairly as to *their* claims, and unconscionability cannot be established "in the abstract." *See Hodges*, 21 F.4th at 541.

*(7) The choice-of-law clause does not invalidate the Agreement*

Plaintiffs' final substantive argument (ECF 17 at 21) merely repackages their choice-of-law arguments addressed above. A choice-of-law clause is not an arbitration-specific term, and the Agreement provides that the Federal Arbitration Act "governs the interpretation and enforcement of this arbitration provision." Agmt. § 4(b). The result of Plaintiffs' argument would be to apply California law in arbitration—not to invalidate the agreement to arbitrate.

**C. The Court Can Sever Any Unenforceable Provision**

Even if the Court found any individual provision unenforceable, the parties expressly agreed to severance: "[I]f any portion of this Agreement is held to be invalid or unenforceable, the remaining portions will nevertheless remain in force." Agmt. § 9. Section 4(h) is "intended to be severable from the rest of the arbitration requirements," and provides that "[i]f, after exhaustion of all appeals, a court decides that the staging process in this subsection is not enforceable, then each Claim shall proceed in accordance with NAM Rules and fees." *Id.* § 4(h).

This text answers Plaintiffs' contention that severing the mass-filing provisions "would not leave a functional arbitration agreement behind" and would "require the Court to rewrite the parties' bargain." ECF 17 at 22. No rewriting is necessary: the parties themselves specified the default rule—individual arbitration under NAM Rules. Agmt. §§ 4(c), 4(h). The same is true of the fee provision, the confidentiality clause, and the appeal threshold, each of which can be excised without disturbing the core agreement to arbitrate individual claims before NAM. Nor is the Agreement "permeated" by unconscionability. As discussed above, Plaintiffs' "seven"





TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER
SUITE 800
SAN FRANCISCO, CA 94111

provisions are overwhelmingly mutual, and they reflect no "systematic effort" to impose an inferior forum.

## III. CONCLUSION

MoneyLion respectfully requests the Court enter an Order dismissing Plaintiffs' class claims and compelling them to arbitrate their individual claims pursuant to the terms of the Arbitration Agreement.

Dated: October 9, 2026

TROUTMAN PEPPER LOCKE LLP

By: /s/ Elizabeth Holt Andrews
Elizabeth Holt Andrews

*Attorneys for Defendants*
MoneyLion Technologies Inc.,
MoneyLion of California LLC,
and ML Plus LLC

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants MoneyLion Technologies Inc., MoneyLion of California LLC, and ML Plus LLC, certifies that this brief is approximately 22 pages long. Concurrently herewith, Defendants are filing an unopposed ex parte application for leave to exceed the 10-page limit set forth in this Court's Civil Standing Order, ¶ IV.D.

Dated: October 9, 2026

*/s/ Elizabeth Holt Andrews*
Elizabeth Holt Andrews