TROUTMAN PEPPER LOCKE LLP
Elizabeth Holt Andrews (SBN 263206)
elizabeth.andrews@troutman.com
Three Embarcadero Center, Suite 800
San Francisco, California 94111-4057
Telephone: 415.477.5700
Facsimile: 415.477.5710

*Attorneys for Defendants*
MoneyLion Technologies Inc.,
MoneyLion of California LLC,
and ML Plus LLC

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION—RIVERSIDE**

Elena Bisquera, et al.,

Plaintiffs,

v.

MoneyLion Technologies Inc., et al.,

Defendants.

Case No. 5:26-cv-03296-SSS-E

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION AS TO PLAINTIFF CHRISTOPHER VALENCIA**

Date: October 23, 2026
Time: 2:00 p.m.
Courtroom: 2 (via Zoom)
Judge: Hon. Sunshine S. Sykes

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. The Parties Formed An Arbitration Agreement .......... 2

1. MoneyLion Provided Reasonably Conspicuous Notice .......... 3

2. Plaintiff Valencia Unambiguously Manifested Assent .......... 7

a. MoneyLion properly presented exemplars, signed agreements, and a business records declaration .......... 7

b. MoneyLion met the electronic signature requirements .......... 9

c. Plaintiff's additional evidence attacks fare no better .......... 9

B. Plaintiff's Choice-of-Law Argument Provides No Basis to Deny the Motion .......... 11

C. Plaintiff Concedes the Remaining Grounds for the Motion .......... 12

III. CONCLUSION .......... 12

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Adams v. S&D Carwash Mgmt., LLC*, No. 2:25-cv-1290, 2026 WL 2475794 (E.D. Cal. Aug. 24, 2026)........................9

*Beltran v. Nationstar Mortgage LLC*, No. 25-cv-4412, 2026 WL 637337 (N.D. Cal. Mar. 6, 2026)..............................4

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022).........................................................................*passim*

*Citizens for Free Speech, LLC v. Cnty. of Alameda*, 338 F. Supp. 3d 995 (N.D. Cal. 2018)...............................................................12

*Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911 (N.D. Cal. 2024).............................................................4, 5

*Godun v. JustAnswer LLC*, 135 F.4th 699 (9th Cir. 2025)..................................................................3, 4, 5, 7

*In re Holl*, 925 F.3d 1076 (9th Cir. 2019)..........................................................................6

*Jialu Wu v. iTalk Glob. Commc'ns, Inc.*, No. 2:20-cv-7150, 2020 WL 8461696 (C.D. Cal. Oct. 21, 2020)........................2

*Johnson v. Walmart Inc.*, 57 F.4th 677 (9th Cir. 2023)..........................................................................2

*Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005 (9th Cir. 2024)...............................................................2, 3, 4, 5

*Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023).......................................................................4, 7

*Pagano v. NordicTrack, Inc.*, 749 F. Supp. 3d 1183 (D. Utah 2024) .........................................................2

*Patrick v. Running Warehouse, LLC*, 93 F.4th 468 (9th Cir. 2024)..........................................................................5


TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

*Pokorny v. Quixtar, Inc.*,
601 F.3d 987 (9th Cir. 2010) .......... 2

*Saeedy v. Microsoft Corp.*,
757 F. Supp. 3d 1172 (W.D. Wash. 2024) .......... 8

*Scribner v. Trans Union LLC*,
738 F. Supp. 3d 1301 (E.D. Cal. 2024) .......... 8, 10

*Shaw v. Regents of Univ. of Cal.*,
58 Cal. App. 4th 44 (1997) .......... 6

*Singh v. Adobe Inc.*,
797 F. Supp. 3d 1038 (N.D. Cal. 2025) .......... 8, 10

*Wash. Mut. Bank, FA v. Superior Ct.*,
24 Cal. 4th 906 (2001) .......... 11

*Yentz v. Nat'l Credit Adjusters, LLC*,
No. 3:20-cv-01364-AC, 2021 WL 1277961 (D. Or. Feb. 15, 2021) .......... 12

**Statutes**

Cal. Civ. Code § 1633.9 .......... 9

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

## I. INTRODUCTION

MoneyLion Technologies Inc., ML Plus LLC, and MoneyLion of California LLC (collectively, "MoneyLion") move to compel arbitration of Christopher Valencia's ("Plaintiff") individual claims pursuant to an arbitration agreement and dismiss his purported class claims pursuant to a class action waiver. Plaintiff agreed to MoneyLion's Agreement for Resolving Disputes not once, but three times: when he created his MoneyLion account on February 19, 2021, by checking a box stating "I agree to the following agreements: Arbitration & Waiver Agreements"; when he enrolled in the Credit Builder Plus Membership on June 12, 2021, by again checking a box agreeing to the "Agreements for Resolving Disputes"; and when he signed a Pledge and Security Agreement that same day containing a capitalized "NOTICE OF AGREEMENTS FOR RESOLVING DISPUTES AND ARBITRATION." He never exercised his right to opt out.

Plaintiff does not deny any of this in his Opposition. He does not submit any opposing declaration. He does not dispute that he created the account, checked the boxes, or signed the agreements. And he does not dispute that MoneyLion's arbitration notice was conspicuous. Instead, Plaintiff attacks MoneyLion's proof, arguing that MoneyLion must produce audit trails or clickstream data before the Court can determine he assented to the Agreement. ECF 18 at 4–7. That is not the law. Courts in this Circuit routinely find formation based on a detailed declaration from company personnel, exemplar screenshots of the relevant enrollment flows, and executed agreements. Conclusory challenges to that evidence, unsupported by any contrary evidence, do not create a genuine dispute.

Plaintiff's choice-of-law argument does not avoid arbitration, either. The Agreement is enforceable under both California and Utah law.

And Plaintiff does not respond at all to MoneyLion's showing that his claims fall within the agreement's scope, that his class action waiver is enforceable, and that his individual claims must be stayed.

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

MoneyLion respectfully requests the Court grant the motion, compel Plaintiff's individual claims to arbitration, dismiss Plaintiff's purported class claims, and stay the remaining proceedings.

## II. ARGUMENT

### A. The Parties Formed An Arbitration Agreement

"If the court finds a valid arbitration agreement exists, [it] must order the parties to proceed to arbitration in accordance with the terms of the agreement." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1013 (9th Cir. 2024) (citation and quotation marks omitted). The party seeking to compel arbitration need only "prov[e] the existence of an agreement to arbitrate by a preponderance of the evidence." *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023).

To determine whether a valid arbitration agreement exists, "federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citation omitted). Plaintiff contends that California law applies to the formation question, whereas the Arbitration Agreement provides that Utah law governs. The Court need not decide which state's law governs[1] because Plaintiff identifies no conflict between California and Utah law on contract formation, and the outcome is the same under both. *See Pagano v. NordicTrack, Inc.*, 749 F. Supp. 3d 1183, 1190–91 (D. Utah 2024). Under California law, the formation of a digital arbitration agreement based on inquiry notice requires (1) that the "website provides reasonably conspicuous notice of the terms to which the consumer will be bound;" and (2) that "the consumer takes some action . . . that unambiguously

---

[1] MoneyLion agrees, for purposes of this Motion only, that the Court should apply California's governmental-interest analysis in identifying the governing state law without reference to the choice-of-law provision. *See Jialu Wu v. iTalk Glob. Commc'ns, Inc.*, No. 2:20-cv-7150, 2020 WL 8461696, at *2 n.1 (C.D. Cal. Oct. 21, 2020); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010). And given the lack of material difference in the relevant law of each jurisdiction, MoneyLion cites California precedent in this reply.

manifests his or her assent to those terms." *Berman*, 30 F.4th at 856. Both elements are satisfied here.

### 1. MoneyLion Provided Reasonably Conspicuous Notice[2]

Determining whether a "website provides reasonably conspicuous notice of the terms to which the consumer will be bound" requires evaluation of "the visual design of the webpages" together with "the full context of the transaction." *Godun v. JustAnswer LLC*, 135 F.4th 699, 709–11 (9th Cir. 2025). "The context of the transaction is a non-dispositive factor . . . used to evaluate whether a website's notice is sufficiently conspicuous." *Keebaugh*, 100 F.4th at 1019.

As an initial matter, the context of the transactions Plaintiff engaged in with MoneyLion would place a reasonable consumer on notice of the existence of an ongoing relationship likely to be governed by contractual terms and conditions. "[C]ourts should expect that a reasonable internet user is more vigilant in looking for contractual terms when the context of the transaction reasonably implies a contractual relationship." *Godun*, 135 F.4th at 709. In assessing whether the context of the relationship put the plaintiff on notice to look for and be bound by additional terms, courts in the Ninth Circuit have considered: "(1) whether the transaction contemplates a continuing relationship by creating an account requiring a full registration process; (2) whether the user is entering a free trial; (3) whether a user enters credit card information; and (4) whether the user has downloaded an app on their phone (suggesting consistent accessibility)." *Id.* at 710 (internal citations and quotation marks omitted).

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

---

[2] Absent from Plaintiff's opposition is any argument that MoneyLion failed to provide reasonably conspicuous notice of the arbitration terms to which he would be bound. *See* ECF 18. For good reason, since in the Ninth Circuit, checkbox clickwrap agreements like those that Plaintiff entered—in which the user must affirmatively check a box explicitly stating "I agree" to certain terms before proceeding—have routinely been enforced. *See Berman*, 30 F.4th at 856; *Keebaugh*, 100 F.4th at 1014.

Here, Plaintiff underwent a full registration process when creating his MoneyLion account through the MoneyLion mobile application, which gave him continuous, discretionary access to MoneyLion's financial education and empowerment products. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023) (affirming order compelling arbitration where users underwent a full registration process, reflecting contemplation of a continuing relationship); *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 925–26 (N.D. Cal. 2024) (context factor satisfied where users registered for online education platform, indicating expectation of ongoing access to educational materials at the user's discretion); *Keebaugh*, 100 F.4th at 1020 (context sufficient where users downloaded mobile app with in-app purchase options, connoting expectation of continual, discretionary access). Thereafter, Plaintiff signed up for MoneyLion's Credit Builder Plus Membership Program, which gave him ongoing access to a comprehensive package of financial products and services. And he also obtained a Credit Builder Plus loan, thereby entrusting MoneyLion with his personal, financial information and entering a transaction of an inherently continuing, forward-looking nature. *See Beltran v. Nationstar Mortgage LLC*, No. 25-cv-4412, 2026 WL 637337, at *4–5 (N.D. Cal. Mar. 6, 2026) (context supported conspicuous notice where "Plaintiff, in undergoing a registration process to make ongoing payments [on loan], should have anticipated terms and conditions to govern his ongoing relationship with Defendant."). Under these circumstances, a reasonable consumer would be on notice to look for a link to the terms of the continuing contractual relationship.

For the visual inquiry, courts focus on whether the notice was "displayed in a font size and format such that the court can fairly assume that a reasonably prudent internet user would have seen it." *Berman*, 30 F.4th at 856. "There is no bright-line test for finding that a particular design element is adequate," nor are there "per se rules about what[] [is] necessarily inadequate." *Godun*, 135 F.4th at 710 (citation omitted and alterations accepted). Courts in the Ninth Circuit examine the totality of the



TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

circumstances via a fact-intensive analysis, looking for several key visual elements, including: (1) the size of the text; (2) proximity of text to the action button (directly above or below); (3) presence of contrasting color of text against the page's background; (4) whether the text is bolded, underlined, and/or capitalized; (5) whether the presence of a hyperlink is readily apparent; and (6) an uncluttered screen design. *See, e.g.*, *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024); *Keebaugh*, 100 F.4th at 1020–21; *Berman*, 30 F.4th at 857; *Ghazizadeh*, 737 F. Supp. 3d at 928–29. "[E]ven minor differences in the design elements" can make the difference, and "[a] hefty dose of common sense goes a long way." *Godun*, 135 F.4th at 710.

Creating a MoneyLion account required Plaintiff to affirmatively check a box located directly next to the phrase "I agree to the following agreements" directly below which the hyperlinked "Arbitration & Waiver Agreements" was listed. The advisal text is presented in black font, contrasting with the page's white, uncluttered background, and of a conspicuous size. And the hyperlink, with its bright green text that precisely matches the formatting of other hyperlinks on the page, is also readily apparent. *See* ECF 14-4, 14-5.

Similarly, signing up for a Credit Builder Plus Membership required Plaintiff to affirmatively check a box located directly next to the phrase "I have read and agree to," which appears above a list of hyperlinked agreements, including "Agreements for Resolving Disputes." Yet again, the advisal text is presented in black font, contrasted against the page's white, uncluttered background, and the bright green hyperlinks are readily apparent. Only after checking the boxes did the "Create account" and "Activate your membership" buttons illuminate and enable Plaintiff to proceed. In other words, Plaintiff's own acts of clicking the box in the process of creating a MoneyLion account and a Credit Builder Plus Membership confirm he saw the notice. *See* ECF 14-6, 14-7.

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

Finally, obtaining a Credit Builder Plus Loan required Plaintiff to sign a Pledge and Security Agreement containing a conspicuous "NOTICE OF AGREEMENTS FOR RESOLVING DISPUTES AND ARBITRATION" in connection with obtaining a Credit Builder Plus loan. *See* ECF 14-8. The notice specifically cautions that "[b]efore signing this Agreement, you should carefully review the Agreements for Resolving Disputes," alerting the reasonable prudent user that he or she should review the agreement(s) incorporated therein by reference. *Id.*; *see also In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019) (finding there was "no question" plaintiff "affirmatively assented" to service terms where he "checked a box acknowledging as much" and the terms "validly incorporate[d] the UPS Tariff/Terms and Conditions of Service, [thus] his assent encompassed the arbitration clause.").

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

Plaintiff's argument that the Membership Agreement did not properly incorporate the arbitration terms under *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44 (1997), fails for two reasons. ECF 18 at 5. First, the terms were "known or easily available" to him. The Membership Agreement states that the Disputes Agreement "is available in the App or on Your personal dashboard on the Site," and the enrollment screen itself listed the "Agreements for Resolving Disputes" directly beneath the checkbox Plaintiff selected. ECF 14-2 ¶¶ 20–21; ECF 14-6. Second, MoneyLion does not depend on incorporation to establish formation. Plaintiff first agreed to the Agreement for Resolving Disputes directly, through a hyperlink to its full text, when he created his account in February 2021. The June 2021 Membership Agreement and Pledge and Security Agreement, each of which expressly acknowledges that he was "already a party" to that agreement, simply confirmed and extended an agreement already in place.

Considering the full context of the transactions that Plaintiff entered with MoneyLion, together with the visual aspects of the notice of the arbitration agreements, the Court should find that MoneyLion provided reasonably conspicuous notice of the arbitration agreement to which Plaintiff would be bound.

**2. Plaintiff Valencia Unambiguously Manifested Assent**

"The second part of the [formation] test—whether the user t[ook] some action that unambiguously manifest[ed] assent—is relatively straightforward." *Oberstein*, 60 F.4th at 515. An internet user's click of a button unambiguously manifests assent where the user "is explicitly advised that the act of clicking will constitute assent to the terms and conditions of the agreement." *Berman*, 30 F.4th at 857. In other words, "a webpage must explain that certain actions will be understood by the offeror to signal assent to contractual terms," and "it must identify what, exactly, those actions are." *Godun*, 135 F.4th at 711. "Explicit advisement generally looks like an explanatory clause, usually at the beginning of an advisal—for example: 'By clicking the Continue >> button, you agree to the Terms & Conditions.'" *Id.* (quoting *Berman*, 30 F.4th at 858) (emphasis and underlining omitted).

Plaintiff does not dispute that MoneyLion meets the relevant standard. MoneyLion explicitly advised Plaintiff that clicking or checking the relevant action buttons and boxes would constitute assent to the hyperlinked agreements' terms and conditions. For Plaintiff's account creation and MoneyLion Membership Plus Program enrollment specifically, the terms include a binding arbitration agreement prominently displayed. And in each case, the advisal is accompanied by a hyperlink to the relevant terms. Plaintiff's own act of checking the boxes demonstrates that he both saw and acted upon the notices.

Instead, Plaintiff challenges the sufficiency of MoneyLion's evidence. But each challenge fails.

**a. MoneyLion properly presented exemplars, signed agreements, and a business records declaration**

Plaintiff first contends that MoneyLion cannot prove he actually saw and clicked the relevant buttons in the absence of contemporaneous electronic records such as an audit trail, electronic signature history, or clickstream data. ECF 18 at 8–11. Plaintiff is grasping at straws.

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

District courts in the Ninth Circuit routinely accept exemplar screenshots corresponding to the time period and agreement flows used by each plaintiff, true and correct copies of signed agreements, and sufficiently detailed declarations from company personnel based on personal knowledge of the company's processes and records. *See, e.g.*, *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1192–94, 1199 (W.D. Wash. 2024) (relying on sufficiently detailed declaration and exemplar screenshots, rejecting argument that a defendant must produce contemporaneous evidence, and holding that conclusory assertions as to authenticity or reliability are insufficient in the absence of contradictory evidence); *Singh v. Adobe Inc.*, 797 F. Supp. 3d 1038, 1045–46 (N.D. Cal. 2025) (exemplar screenshots and declaration based on personal knowledge and review of business records sufficient to satisfy burden of demonstrating what consumers saw when signing up for subscription for purposes of determining whether enforceable arbitration agreement was formed); *Scribner v. Trans Union LLC*, 738 F. Supp. 3d 1301, 1305–06 (E.D. Cal. 2024) (rejecting plaintiff's argument that company declarant was speculating as to what plaintiff "accessed, saw, or clicked," instead finding declaration was "asserting what was necessary" to create an account based on personal knowledge of the enrollment process, which can be inferred from a declarant's position). This is the same evidence MoneyLion presented.

*Ruiz v. Moss Bros. Auto Grp., Inc.* does not help Plaintiff. There, the employer offered only a summary assertion that the employee had electronically signed the agreement, and the employee submitted a declaration stating that he did not recall signing it. 232 Cal. App. 4th 836, 844 (2014). Here, MoneyLion submitted a detailed declaration explaining its account creation, membership enrollment, and loan-signing processes, together with exemplar screenshots and the executed agreements bearing Plaintiff's electronic signatures. Plaintiff, meanwhile, submitted no declaration at all. He does not deny creating an account, checking the boxes, clicking "Create account" or "Activate your membership," or signing a Pledge and Security Agreement.

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

**b. MoneyLion met the electronic signature requirements**

Plaintiff cites California Civil Code section 1633.9(a) to suggest MoneyLion must present more to establish he electronically signed the agreements. That provision states an electronic signature is attributable to a person if it was "the act of the person," and that this "may be shown in any manner," including by "the efficacy of any security procedure applied." Cal. Civ. Code § 1633.9(a). Plaintiff could only create his account by supplying his personal identifying information and setting a unique password. He executed the subsequent agreements from within that password-protected account, under his name, as part of a process he had to complete to obtain a membership and a loan disbursed to his own bank account. ECF 14-2 ¶¶ 15, 20–21; ECF 14-4, 14-6, 14-8. The executed agreements bear his name and dates of execution, and he used the account and the products obtained through it. That is precisely the type of evidence that establishes attribution under section 1633.9(a). *See also supra* § II.A.1.

Additionally, Plaintiff contends that "[o]nce the purported electronic assent is challenged, MoneyLion must provide" additional attribution evidence. But Plaintiff's bare assertions regarding inadequate proof of authenticity[3] do not constitute contradictory evidence sufficient to undermine MoneyLion's showing. *See, e.g.*, *Adams v. S&D Carwash Mgmt., LLC*, No. 2:25-cv-1290, 2026 WL 2475794, at *3–4 (E.D. Cal. Aug. 24, 2026) (conclusory denials insufficient to overcome clear showing, by competent evidence, to the contrary).

**c. Plaintiff's additional evidence attacks fare no better**

Plaintiff's specific criticisms of Exhibits C and E do not change the analysis. As to Exhibit C, Plaintiff complains that the screenshot shows the checkboxes

[3] Tellingly, Plaintiff does not suggest the exemplars MoneyLion offered do not accurately depict what he saw, he does not contend he did not click the relevant action buttons on those pages, or and he does not affirmatively deny having signed the agreement.

unselected and does not display his name. ECF 18 at 4. But Exhibit C depicts the account-creation screen as it is presented to every user before he or she acts—that is the point of an exemplar. The Lobo Declaration explains that the "Create account" button illuminates only after the user checks the required boxes, and that Plaintiff completed that step, generating his electronically signed Agreement for Resolving Disputes dated February 19, 2021. ECF 14-2 ¶ 15; ECF 14-4, 14-5. A screenshot showing the boxes unchecked is entirely consistent with, and indeed confirms, that a user could not proceed without checking them.

As to Exhibit E, Plaintiff notes that the screenshot refers to "John Smith" and reflects an April 25, 2021 first-payment date. ECF 18 at 6. Exhibit E is an exemplar of the Credit Builder Plus Membership enrollment flow in use in or around June 2021. MoneyLion offered Exhibit E to show the layout and advisal language of the enrollment screen Plaintiff completed, not as a record of his particular session. Plaintiff does not contend that the screen he saw differed in any material respect, and the record of his actual assent is Exhibit D itself: the Membership Agreement bearing his electronic signature and dated June 12, 2021. ECF 14-2 ¶ 20; ECF 14-6. Likewise, the fact that the exemplar displays checked boxes simply reflects the screen's appearance after a user has made the required selections, which is the only state in which the "Activate your membership" button can be pressed.

Plaintiff's attack on Ms. Lobo's tenure equally lacks merit. ECF 18 at 5. A declarant need not have personally witnessed a customer's enrollment in order to testify about a company's enrollment process and the records it generates. Personal knowledge may be based on familiarity with the company's systems and review of business records kept in the ordinary course. *See Scribner*, 738 F. Supp. 3d at 1305–06; *Singh*, 797 F. Supp. 3d at 1045–46. Ms. Lobo attests that she is personally familiar with the systems and records that track the agreements MoneyLion's customers accept, that she reviewed Plaintiff's account records, and that those records were

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

entered at or near the time of the events by persons with knowledge. ECF 14-2 ¶¶ 4, 11, 13. That is all that is required.

Finally, there is no doubt about which version of the dispute-resolution agreement governs. The "Arbitration & Waiver Agreements" hyperlink on the account-creation screen linked to the July 29, 2019 version of MoneyLion's Agreement for Resolving Disputes, and Exhibit B is Plaintiff's electronically signed copy of that agreement, dated February 19, 2021. ECF 14-2 ¶ 15; ECF 14-4. That is the agreement MoneyLion seeks to enforce, and it is the same agreement the June 2021 Membership Agreement and Pledge and Security Agreement to which Plaintiff agreed.

Because MoneyLion provided reasonably conspicuous notice and put forward sufficient evidence that Plaintiff unambiguously manifested his assent, the Court should find that MoneyLion met its burden of demonstrating by a preponderance of the evidence that the parties formed an agreement to arbitrate.

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

### B. Plaintiff's Choice-of-Law Argument Provides No Basis to Deny the Motion

Plaintiff devotes the final section of his opposition to arguing that California law, rather than Utah law, should govern the enforceability of the Arbitration Agreement. ECF 18 at 7–8. The Court need not resolve that question because Plaintiff never explains what difference it would make. He identifies no conflict between California and Utah law, and he raises no defense to enforcement, such as unconscionability, under the law of any state. A choice-of-law dispute is relevant only where the competing laws would produce different results. Absent such a conflict, there is nothing for the governmental-interest analysis to resolve. *See Wash. Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 919–20 (2001). Plaintiff's argument that California has a greater interest in protecting its residents is therefore beside the point, and the Arbitration Agreement is enforceable under the FAA regardless of which state's law applies.

### C. Plaintiff Concedes the Remaining Grounds for the Motion

Plaintiff's opposition is limited to formation and choice of law. He does not dispute that his claims, all of which arise from his use of MoneyLion's Instacash and Credit Builder products, fall within the Arbitration Agreement's broad definition of "Claim"; that MoneyLion Technologies Inc., ML Plus LLC, and MoneyLion of California LLC may each enforce the agreement; that his class action waiver is enforceable; or that Section 3 of the FAA requires a stay of his individual claims pending arbitration. ECF 14-1 at 13–16. Nor does he dispute that he never exercised his right to opt out of arbitration. *Id.* at 12. By failing to respond to these arguments, Plaintiff has conceded them. *See, e.g.*, *Citizens for Free Speech, LLC v. Cnty. of Alameda*, 338 F. Supp. 3d 995, 1005 (N.D. Cal. 2018); *Yentz v. Nat'l Credit Adjusters, LLC*, No. 3:20-cv-01364-AC, 2021 WL 1277961, at *4 (D. Or. Feb. 15, 2021). Accordingly, once the Court finds that an agreement to arbitrate was formed, it should compel arbitration of Plaintiff's individual claims against all Defendants, dismiss his class claims, and stay the action pending arbitration.

## III. CONCLUSION

MoneyLion respectfully requests the Court enter an Order dismissing Plaintiff Christopher Valencia's class claims, compelling him to arbitrate his individual claims pursuant to the terms of the Arbitration Agreement, and staying the remaining proceedings pending arbitration.

Dated: October 9, 2026

TROUTMAN PEPPER LOCKE LLP

By: */s/ Elizabeth Holt Andrews*
Elizabeth Holt Andrews

*Attorneys for Defendants*
MoneyLion Technologies Inc.,
MoneyLion of California LLC,
and ML Plus LLC

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants MoneyLion Technologies Inc., MoneyLion of California LLC, and ML Plus LLC, certifies that this brief is approximately 12 pages long. Concurrently herewith, Defendants are filing an unopposed ex parte application for leave to exceed the 10-page limit set forth in this Court's Civil Standing Order, ¶ IV.D.

Dated: October 9, 2026

*/s/ Elizabeth Holt Andrews*
Elizabeth Holt Andrews

TROUTMAN PEPPER LOCKE LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057